No. 27,611.

HAROLD B. STAPLES, a Minor, by His Mother and Next Friend, BESSIE C. MURRAY, *Appellant,* v. LLOYD D. MURRAY, *Appellee.*

(262 Pac. 558.)

SYLLABUS BY THE COURT.

TRUSTS—*Creation and Existence—Charge Against Beneficiary Under Insurance Policy—Power of Revocation.* In 1916 a soldier who had enlisted took out war-risk insurance, naming his brother as beneficiary, with directions to use one-half of the insurance for the education and maintenance of an infant stepson, and the other one-half was to be retained by the brother. The brother accepted the trusteeship and promised to carry out the trust as declared. In the war the soldier contracted an illness which resulted in his death about four years after the certificate of insurance was issued. During his illness a portion of the insurance fund was used for treatment and care of the soldier. Before his death he declared a revocation of the gift to his stepson, and the brother afterwards retained the insurance and refused to pay any part of it to the stepson. In an action by the infant to impose a trust upon one-half of the fund it is held that the request of the soldier did not vest a present property right in the stepson and that his original request did not amount to a complete and executed trust beyond the power of revocation.

Appeal from Allen district court; ROBERT E. CULLISON, judge. Opinion filed January 7, 1928. Affirmed.

*John F. Kaster, Ralph W. Oman, Thomas Amory Lee,* all of Topeka, and *A. R. Enfield,* of Iola, for the appellant.

*Charles W. Garrison,* of Topeka, *G. H. Lamb* and *W. E. Hogueland,* both of Yates Center, for the appellee.

Trusts, 39 Cyc. pp. 34 n. 48, 73 n. 2, 92 n. 29.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Harold B. Staples, a minor, by his next friend, to impose a trust upon $5,000 of the proceeds of a policy of government war-risk insurance for $10,000. Harold B. Staples was the son of Bessie C. Staples, a widow, who was married to Clyde Murray on April 6, 1916. At the time of this marriage the plaintiff was four and one-half years old. Bessie C. Murray was the wife of Clyde Murray when he enlisted for the war, took out the insurance mentioned, and continued to be his wife until the time of his death. For some reason not clearly shown Clyde Murray enlisted as a single man. He took out the policy of insurance and named his brother, Lloyd D. Murray, the defendant, as the beneficiary, and about that time gave the defendant directions as to the disposition of the insurance. In a letter to Bessie C. Murray written August 2, 1919, the defendant stated:

"DEAR BESSIE—Clyde has requested that I write you a line setting forth the substance of the requests made by him to me at the time he took out his government insurance. He requested me to make it a part of my duty as his brother and as a benefactor to promise to see that one-half of his insurance, amounting to five thousand ($5,000) dollars, be used to educate and to promote the best interests of Harold B. Staples, acting jointly with you in executing this duty. My promise was given him at that time and this will serve as a like promise to you for me to fulfill this duty with his best interests at heart at all times.                         (Signed)   LLOYD D. MURRAY."

It appears that some time later Mrs. Murray made application to the government for an allotment as the wife of Clyde Murray, which caused her husband some embarrassment. On January 25, 1920, he wrote to her, saying in effect that such a claim if pressed by her would result in a dishonorable discharge to him, the disgrace of a conviction and loss of the insurance which he said "is equally divided between you and Lloyd, and always has been." He further said that the insurance was—

"The one and last redeeming act which my worldly efforts could produce, but if this claim of me having a wife or ever having had one is proven, why the whole plan is gone forever, and I can hardly provide other means of protection for four innocent children, Harold and Lloyd's three, one who [is] fatherless and three who are motherless, and to whom God knows I have in my heart never forgot some allegiance and thought in the end I could bid the world good-bye and say it is well for those behind."

In the letter he spoke of his enlisting as a single man as a miserable mistake made in pure ignorance, and that there had been no chance to correct the mistake. He added that he had made and forwarded to the government an affidavit to the effect that it was a case of mistaken identity and that he was and always had been single and "if it is proven that I am an impostor why it leaves you and Lloyd loser of $5,000 apiece, and what it means otherwise to the Murray name." He advised her to keep the facts as to her position and knowledge to herself, except Lloyd, and to let no one know of her position or business and that it might be necessary to disown him as a husband or even as an acquaintance. Two or three days later the defendant wrote a letter to Mrs. Murray in which he spoke of the serious illness of Clyde and the expectation that he would not live beyond the following spring. As to the insurance matter and claim that she had made for an allotment he admonished her that it would not only cause Clyde to be dishonorably rated in the army, but would cancel his insurance, and stated: "You know what you may expect in connection with the payment of this insurance and you know you can absolutely depend upon a square deal from me as per letter written this summer." He further requested that if she had started anything to cancel it, and she should leave her residence without even giving a forwarding address. After these letters had passed, Mrs. Murray dropped her application for an allotment as the wife of the soldier. It was shown and found that Clyde Murray was extremely ill after returning from the army, and that he was in government hospitals practically all of the time after his return until his death from a disease contracted in the army. During that time he was classified as being completely disabled and was paid $1,870 out of the insurance in question. The plaintiff has never received any of the proceeds of the insurance policy. One of the findings of the trial court is that, "before his death, Clyde S. Murray by letter to the defendant recalled and revoked all requests he had made in favor of the plaintiff." This finding was based upon a letter to the defendant in which, after speaking of the disposition of his remains and a request that one Lena should share in the insurance, he added: "So far as Mrs. Murray and her son are concerned, I am done. The requests I have made in Harold's favor I retract absolutely." The conclusion of the court was that a trust was not established and that the plaintiff was not entitled to any part of the insurance.

The principal questions discussed on this appeal are, first, was a valid declaration of trust made, and second, if so, was it subject to revocation by Clyde S. Murray, who had requested that a share of the insurance be expended for the benefit of plaintiff.

Defendant argues that nothing tangible passed to him as trustee, nothing that he could take and deliver to the plaintiff, and that the promise or direction was nothing more than a testamentary request that a part of the insurance be devoted to the rearing and education of his stepson, that his stepson was a mere beneficiary in the insurance and that the insured was at liberty to change his beneficiary at any time before his death.

It is the view of the court that a valid trust was not created by the insured, and at most the declaration and promise made did not constitute a complete and executed trust which was beyond the power of revocation. The elements essential to the creation of a trust are that there must be a person competent to create it, explicit words indicating an intention to create a trust, a person capable of holding an ascertainable object as trustee, a definite subject and also a declaration of the terms of the trust. (26 R. C. L. 1179.)

It is the view of the court that when the promise was made there was no fund in existence, and that unless the insured made the required payments no fund would ever come into existence. Nothing was transferred to the defendant except a request for an application of the proceeds of an insurance policy in which defendant was named as beneficiary. The policy was still within the control of the insured and he was at liberty to change the beneficiary at any time, and at will he could allow the insurance to lapse by failing to make the necessary payments. The designation of a beneficiary was accompanied with a verbal request that the stepson should share in the benefits of the insurance, and since the insured could change the beneficiary and name another than the defendant how could the defendant be regarded as a trustee after he had been ousted and into whose hands no fund had ever been placed. It is true there was no change of beneficiary, but the so-called trusteeship of defendant was no more binding than if a change had actually been made. The fund was something to be received, something to be brought into existence and kept alive by the future action of the insured, and hence it is held that it did not amount to an executed and irrevocable trust. So far as the elements of a trust entered into the transaction, it was executory in character and in

some respects had the elements of a testamentary bequest subject to change or revocation without the consent of those to whom the tentative gifts had been promised. Plaintiff was in a sense a beneficiary of the insurance contracted for, but he acquired no greater right than the named beneficiary who could be removed and another substituted by the insured at any time. An express revocation of the promised gift to plaintiff was shown, and hence the holding of the trial court that a trust was not established and that plaintiff was not entitled to recover any part of the insurance, must be affirmed.

JOHNSTON, C. J. (dissenting): I am unable to agree with the conclusion that a trust was not created, nor that plaintiff had failed to establish a right of recovery. To make a declaration of an express trust it is essential that the trustee intend to create a trust. A valid declaration of trust does not require any particular form of words. Any language is sufficient which shows the intention to create a trust and which definitely designates the property to be disposed of. It is a general rule often stated that the elements constituting a trust are a declaration of words to create it, a subject or fund sufficiently identified, a designated trustee, a transfer of the subject or fund to the trustee to be held and used by him for the benefit of another duly described. (39 Cyc. 34.) Clyde S. Murray, it appears, clearly declared a purpose to set aside a part of the insurance fund for the benefit of his stepson and it was done in terms that were reasonably certain. There was no uncertainty as to the purpose, nor as to the fund itself, no uncertainty as to the trustee, nor any as to the disposition to be made of the fund by the trustee. It is shown that the trustee accepted the trust and agreed to carry it out. He not only gave his promise to the trustor to faithfully carry out the trust, but he promised the guardian of the child that he would faithfully fulfill the duty and use the fund to educate and promote the interests of the child. Some time after the declaration of the trust the trustor unequivocally confirmed the terms and conditions of the gift to his stepson. It is said that the child had no insurable interest in the life of the trustor and could not have been legally named as a beneficiary in the policy, but that is not material since a legal beneficiary was named, and since it was competent for the trustor to prescribe that the trustee should pay the fund or a part of it to one not related to him. A trust in the

proceeds of a life insurance policy may be declared and the designated beneficiary required to apply or pay over to a third person, a stranger. (*Northwestern Masonic Aid Ass'n v. Jones et al.*, 154 Pa. St. 99; 39 Cyc. 73, and cases cited.)

It is argued that the trustor was at liberty at any time to change the beneficiary named in the policy and to have substituted some one else than the defendant to whom the directions were given, and that this would have destroyed the trust. An executed trust never fails for lack of a trustee; but whatever complications might have arisen, if such a change had been made it is sufficient to say that the beneficiary was not changed, as the defendant was the beneficiary when the insured died. That question, therefore, has no bearing on the question we are considering. (*Coyne v. Supreme Conclave*, 106 Md. 54.) Nor is there any claim made that the trust or disposition of the fund was in any way inconsistent with the conditions or regulations of the government which issued the policy. And it cannot be said to have been contrary to any public policy. (*Kendrick v. Ray*, 173 Mass. 305.)

I conclude that the action taken constituted a valid trust and is enforceable unless it is revocable. (Note in 14 Ann. Cas. 872.) Was the trust a revocable one? It is found that the trustor attempted a revocation just before he died. There was no expression of reservation of the power of revocation, nor anything said by the trustor of an intention to make the gift revocable. There has been no consent by the plaintiff that the trust might be revoked. It has been said to be:

"A general rule that where a valid and effective voluntary trust has been created and no power of revocation has been reserved, it cannot be revoked by the creator without the consent of the beneficiaries thereunder." (Note in 38 A. L. R. 941.)

A great number of authorities are cited in support of the proposition. In *Miles v. Miles*, 78 Kan. 382, 96 Pac. 481, the validity of a trust and the right of revocation were considered. The trust was created by a written instrument executed by Mrs. Miles, transferring property in trust for certain uses and benefits of certain children. The trustee was required to pay over the rents and profits of the property transferred to the trustor during her life, and then it was to be delivered to the children. Later the mother devised the property to another, and after she died the one to whom it was devised sought to recover the property. There was a contention

that the trust was executory, but it was held to be an executed or completed trust and when made that it became irrevocable. The court said, quoting from 3 Pomeroy's Equity Jurisprudence, 3d ed. § 1001, that "A trust is executed when no act is necessary to be done to give effect to it when the trust is fully and finally declared in the instrument creating it." In the present case the trust appears to have been complete when the declaration was made. There was nothing more to be done by the creator of the trust to complete it. He had set apart one-half of his insurance for the benefit of the infant plaintiff, and gave the trustee appointed specific directions to carry it out. It is true there was reserved to the trustor the right to use a portion of the insurance to care for himself during his illness, and the sum of $1,870 of the fund was expended for that purpose, but that fact does not impair its character as an executed trust. In *Miles v. Miles*, supra, the court said:

"Nor does the fact that the donor retained a beneficial interest in the property during her life destroy its character as an executed trust. In *Stone v. Hackett, Executor, and others*, 78 Mass. 227, the income of the property was to be paid to the donor during his life, and upon his death the principal was to be divided among certain charities. The trust was held valid. In *Davis v. Ney*, 125 Mass. 590, 28 Am. Rep. 272, a trust was upheld which allowed the donor to receive, not only the income, but such part of the principal as she might need during her life." (p. 388.)

In the later case of *Reddy v. Graham*, 110 Kan. 753, 205 Pac. 362, the question arose whether a valid trust had been established. The declaration was partly in writing and partly in parol. A mother made a deed to her son with the direction that the property should be equally divided among her three children, the son being one of them. At the same time a will was prepared and executed by the son in which two-thirds of the property that had been conveyed was devised by the son to the other two children, one-third to each, and the other retained by himself. Later the mother brought an action against her son to set aside the deed and trust, alleging misrepresentation and fraud in its execution and the lack of consideration. It was found that there was no fraud, mistake or undue influence in the execution, and further that no express power of revocation was reserved in the trustor. On the facts it was ruled that the deed and verbal contract created a complete trust without express power of revocation, and it was said:

"The rule is well settled that under these circumstances it requires the consent of all the beneficiaries before the creator of the trust can ·revoke it. (39 Cyc. 92, and cases cited in note.)" (p. 755.)

Since the trust declared was executed and complete, and no right of revocation reserved, it follows that the attempt of the trustor to retract the gift was ineffectual. So far as the defendant trustee is concerned it conclusively appears that he made an express and valid promise to pay one-half of the insurance for the education and maintenance of the infant plaintiff, and it is inequitable to allow him to retain the share of the insurance which he agreed to pay to plaintiff. (*Christensen v. Christensen,* 14 Fed. [2d] 475; *Ambrose v. United States,* 15 Fed. [2d] 52.)

Dawson and Harvey, JJ., join in the dissent.