Daniel W. Gurnett et al., Trading as Gurnett & Company, Appellants, v. The Mutual Life Insurance Company of New York et al., Appellees.

Gen. No. 36,042.

Heard in the first division of this court for the first district at the June term, 1932. Opinion filed December 29, 1932.

TAYLOR, MILLER, BUSCH & BOYDEN, for appellants; JOHN S. MILLER, JAMES J. MAGNER, BERNARD K. SHAPIRO and WILLIAM KLEVS, of counsel.

WALTER W. ROSS, RICHARD S. TUTHILL and ROBERT D. ROSS, Guardian *ad Litem,* for appellees; WINSTON, STRAWN & SHAW, JOHN C. SLADE and GEORGE T. EVANS, of counsel for The Mutual Life Insurance Company of New York. POPPENHUSEN, JOHNSTON, THOMPSON & COLE, of counsel for The Penn Mutual Life Insurance Company.

MR. JUSTICE MATCHETT delivered the opinion of the court.

On December 2, 1930, Knowlton L. Ames entered into an agreement in writing with the Central Trust

Co., predecessor of Central Republic Bank & Trust Co., which expressed the intention of creating a trust of the proceeds of a large number of insurance policies written on his life. An amendment to the writing was executed April 2, 1931, and a second amendment on June 25, 1931.

December 23, 1931, Ames died leaving a last will and testament which named his son, John D. Ames, and the Central Republic Bank & Trust Co. executors. The will was filed for record in the probate court of Cook county, and his estate is now being probated in that court.

Complainants, who aver that they are contract creditors of Knowlton L. Ames to an amount in excess of $300,000, filed their amended and supplemental bill in behalf of themselves and other creditors similarly situated and in behalf of the defendants, who, it is alleged, are disqualified by interest. They made defendants thereto the Central Republic Bank & Trust Co. as trustee under the alleged trust agreement, the executors of the estate, the legatees, the heirs at law and next of kin of the deceased and certain insurance companies which issued policies on the life of Knowlton L. Ames.

The prayer of the bill was that the trust agreement of December 2, 1930, with amendments thereto, might be decreed to be void; that the insurance companies be restrained from paying the proceeds of the policies according to the directions of the alleged void trust agreement, and that the trustee should be declared to hold the proceeds of these policies as a resulting trust in favor of the estate, and directed to pay the same to the executors.

Defendants moved to dismiss the amended and supplemental bill on five grounds specifically set up in a written motion, which according to established practice was treated as a general and special demurrer. *Grimes v. Grimes,* 143 Ill. 550; *Leonard v. Arnold,* 244

Ill. 429; *MacGuidwin v. South Park Com'rs*, 333 Ill. 58; *Rosenzweig v. Roitman*, 266 Ill. App. 124.

After full consideration the court found that a valid and legal trust had been created, and complainants excepting and electing to stand by their amended and supplemental bill, the same was dismissed for want of equity. That decree complainants seek to reverse.

The material averments of the amended and supplemental bill (which for the purpose of this opinion must be regarded as true) are as follows: The executors estimate the value of the estate of Knowlton L. Ames to be $50,000. Claims against the estate for more than $800,000 have been filed, and it is said the estate is hopelessly insolvent.

There is no allegation, however, that any fraudulent purpose entered into the agreement for the creation of the alleged trust. Insurance companies during the life of Ames issued policies on his life for a total amount of more than a million dollars. A list and description of these policies and amendments to the agreement are attached to the bill and made a part thereof.

Many of these insurance policies were at first issued payable to the executors, administrators or assigns of Knowlton L. Ames. December 2, 1930, Knowlton L. Ames, while he was, as the bill alleges, insolvent, caused many of the policies to be made payable to the predecessor of the defendant trustee as beneficiary, and since the death of Ames the proceeds of a number of these policies were paid to said trustee prior to the filing of the bill.

The policies issued by the defendants, Mutual Life Insurance Company of New York and Penn Mutual Life Insurance Company, are by their terms payable to defendant trustee upon the purported trusts. Complainants allege on information that the policies have never been assigned to the trustee.

Defendants, however, contend that the facts alleged in the bill amount in law to an assignment.

Complainants aver that Knowlton L. Ames reserved to himself by the terms of the trust agreement the right to receive the cash surrender value of the policies, to use the borrowing value of the same and to receive and retain all dividends which might be declared upon them; that after defendant trustee was named beneficiary Knowlton Ames borrowed money on these policies and that he at all times during his life reserved the right to change the beneficiary and terminate the trust; that the purported trust does not conform to the legal requirements for a testamentary disposition of property *inter vivos,* in that there was no transfer by the trustor, Knowlton L. Ames, to the purported trustee of any interest in the policies during his lifetime; that the purported trust was therefore void and the proceeds of the policies should be delivered to the executors.

The contention of complainants is that since Ames, the trustor, reserved to himself the right to change the beneficiary, which by the terms of the policies he could lawfully do, the interest of the trustee in these policies was a mere expectancy and in no sense property such as would give a court of chancery a subject matter to which its jurisdiction might attach.

It is not denied that a life insurance policy is property and that it may constitute the *res* of a valid trust, as was held by the courts of England in *Fortesque v. Barnett,* 2 Mylne & Keene 36, and by the courts of Illinois in *Otis v. Beckwith,* 49 Ill. 121, and the many cases which follow that decision.

Complainants have cited a large number of cases such as *Mayer v. Illinois Life Ins. Co.,* 211 Ill. App. 285; *Columbian Circle v. Mudra,* 220 Ill. App. 231, affirmed 298 Ill. 599; *Slocum v. Metropolitan Life Ins. Co.,* 245 Mass. 565, 139 N. E. 816; *Quist v. Western & Southern Life Ins. Co.,* 219 Mich. 406, 189 N. W. 49, and *Hopkins v. Northwestern Life Assur. Co.,* 99 Fed.

199, all of which in substance hold that a beneficiary whose contingent right is subject to an absolute right of revocation by the insured has a mere expectancy, which is not more than the right of a supposed heir to a living person; that such beneficiary takes no vested interest but only an inchoate possibility which in no sense rises to the dignity of property.

It is urged that such beneficiary has nothing that can be assigned (*Carpenter v. Knapp,* 101 Ia. 712, 70 N. W. 764; *Mutual Benefit Life Ins. Co. v. Swett,* 222 Fed. 200), nothing that will pass by operation of law to the trustee in bankruptcy (*In re Hogan,* 194 Fed. 846), nothing that is devisable or descendible (*In re Hammer,* 102 Misc. 193, 169 N. Y. S. 684; *Supreme Council American Legion of Honor v. Gehrenbeck,* 124 Cal. 43, 56 Pac. 640; *Richmond v. Johnson,* 28 Minn. 447, 10 N. W. 596) and no right of action for anticipatory breach (*Knights Templar and Masons' Life Indemnity Co. v. Gravett,* 49 Ill. App. 252; *Slocum v. Northwestern Mut. Life Ins. Co.,* 135 Wis. 288, 115 N. W. 796; *Mutual Relief Ass'n v. Ray,* 173 Ark. 9, 292 S. W. 396; *Delaney v. Delaney,* 175 Ill. 187; *Ptacek v. Pisa,* 231 Ill. 522).

Complainants point out that the courts of Illinois have carefully distinguished the rights of such beneficiary from the property rights of the insured himself in *Martin v. Stubbings,* 126 Ill. 387, and *Equitable Life Ins. Co. v. Mitchell,* 248 Ill. App. 401. Complainants say that if the insured in this case had not reserved the right in himself to change the beneficiary, a vested interest would have passed to the trustee which would have been sufficient to support a trust; that an assignment of the policies to the trustee would have created a sufficient interest to support the trust; but they say that Knowlton L. Ames did not convey to the trustee any such vested interest; that he reserved the right to change the beneficiary, the right to assign the policies,

the right to obtain the cash surrender value thereof, the right to borrow thereon and the right to receive all dividends thereon; that the interest of the trustee during the lifetime of Ames could not have been alienated by it; that it had no property right which the law would have protected; that it could not have sued any of the insurance companies for an anticipatory breach of contract; that it took nothing upon which it could act as trustee. It is not denied that Ames intended to create a valid insurance trust, but it is said that he did not comply with the legal requirements necessary to effectuate his intentions.

It is not denied by defendants that a *res* (property) is indispensable to the existence of a valid trust. The doctrine was precisely stated in *Cruwys v. Colman,* 9 Ves. 323, where the master of the rolls, Sir W. Grant, said: "Three circumstances must occur: Sufficient words to raise it, a definite subject, and a certain and ascertained object." Or as stated in *Gough v. Satterlee,* 52 N. Y. S. 492:

"A subject or corpus of a trust estate is absolutely essential, not merely to the validity of a trust, but to its existence. Courts will supply a trustee; in England, at times, under the *cy pres* power, they will select beneficiaries; but in no country will they furnish a trust estate." The decisions of the courts of Illinois are consistent with these cases. *Marble v. Marble,* 304 Ill. 229.

In Perry on Trusts, vol. 1, section 68, the author describes the properties which may become the subject matter of a trust as follows:

"At common law no possibility, right, title nor *chose in action* could be granted or assigned to strangers. But in equity the rule is different, and *choses in action,* expectancies, contingent interests, and even possibilities may be assigned, and a valid trust created in them. Equitable reversionary interests stand upon the same ground. Property not owned by the assignor

at the time, and not even *in esse,* may be assigned in equity; and a valid trust may be created in a naked power or authority."

Complainants say that the author does not cite a case in support of the section, and that the statement is inconsistent with other sections. They quote 26 Ruling Case Law, par. 6, p. 1171:

. . . "There is good authority for the rule that an insured cannot impress a trust on his interest in a life benefit insurance certificate, and the reason given for this is that he has no interest in the fund, but possesses a power of appointment merely."

Defendants also cite cases to the effect that the reservation of the power of the trustor to revoke a trust does not invalidate the trust: *Kelly v. Parker,* 181 Ill. 49; *Mayer v. Tucker,* 102 N. J. Eq. 524, 141 Atl. 799; *People v. Northern Trust Co.,* 289 Ill. 475; *In re Dolan's Estate,* 279 Pa. 582, 124 Atl. 176. However, the right of the trustor to retain the power of revocation is not, as we understand it, questioned by complainants.

Many cases cited by defendants are distinguishable upon the facts, as *Hirsh v. Auer,* 146 N. Y. 13, 40 N. E. 397; *Lashley v. Lashley,* 212 Ala. 255, 102 So. 229; *Christensen v. Christensen,* 14 F. (2d) 475, and *Ambrose v. United States,* 15 F. (2d) 52; each of which concerns a beneficiary who had received the proceeds of an insurance policy and the *cestui que trust,* for whose benefit the supposed trust had been brought into existence. Under such state of facts, irrespective of other questions, equity would raise, if necessary, a trust *ex maleficio* as against the supposed trustee. *Coyne v. Supreme Conclave, I. O. H.,* 106 Md. 54, 66 Atl. 704.

Defendants insist that though the right of the insured to change the beneficiary is a property right, it is a right which is in some cases qualified, and this view is supported by some of the cases. In *Freund v.*

*Freund,* 218 Ill. 189, it was held that where the right to change the beneficiary was reserved, the change could be effectuated only by compliance on the part of the insured with the statute under which the insurance company was organized. In that case our Supreme Court followed the decisions of the courts of New York, where the contract of insurance was entered into. In *Indiana Nat. Life Ins. Co. v. McGinnis,* 180 Ind. 9, 101 N. E. 289, it was held that a change of beneficiary in order to be effectual must be made in compliance with the provisions of the policy. In *Anderson v. Broad Street Nat. Bank,* 90 N. J. Eq. 78, 105 Atl. 599, in a controversy between the beneficiaries named in certain insurance policies and an assignee of the insured, the vice chancellor in substance said that each of the interests was subject to assignment; that neither could assign anything except that which would come to that one; and he continued:

"After a careful examination of the authorities, I am of the opinion that whether the interest be regarded as vested and defeasible, contingent, a mere expectancy, or whatever the characterization may be, if the policy stipulates the course by which the beneficiary's interest is to be nullified, he cannot be deprived of his right unless the prescribed mode for its destruction is followed, and that the assignment in this case by the assured had not that effect. The judgment in the *Sullivan* case rests as securely on this as it does on the ground that the assignment by Mrs. Cahill appertained only to her title. The latest authority upon this phase of the law of insurance, brought to my attention, is *Johnson v. New York Life Insurance Co.,* L. R. A. 1916 A 868. The cases are gathered in the opinion and the editor's note."

Complainants say that this case is squarely opposed to the views of the courts of this State and cite *Equitable Life Ins. Co. v. Mitchell,* 248 Ill. App. 401, which, however, is distinguishable in that so far as the

record shows the power of the assured to change the beneficiary was there absolute and unqualified.

The decision of the New Jersey court is not inconsistent with *Jarvis v. Binkley,* 206 Ill. 541, where our Supreme Court said:

"This court has repeatedly held that contingent interests and expectancies, although not assignable in law, may be transferred, so as to be binding in equity, by a contract made in good faith and for a valuable consideration. (*Crum v. Sawyer,* 132 Ill. 443; *Hudnall v. Ham,* 183 id. 486.) And the same general doctrine has been applied to specific cases, where the beneficiary has assigned the contingent interest in a certificate of insurance. *Pomeroy v. Manhattan Life Ins. Co.,* 40 Ill. 398; *Supreme Council Royal Arcanum v. Tracy,* 169 id. 123."

Defendants cite *Johnston v. Scott,* 137 N. Y. S. 243, and *Lauterbach v. New York Investment Co.,* 117 N. Y. S. 152—cases which discuss life insurance trusts without deciding the question here. They also cite *Frick v. Lewellyn,* 298 Fed. 803, and other cases which construe statutes which provide for taxation of rights of succession to property.

The case most relied on by complainants is *Staples v. Murray,* 124 Kan. 730, 262 Pac. 558. It appeared that Bessie C. Staples, a widow, married Clyde Murray on April 6, 1916. She had by a former marriage a son, Harold B. Staples, who at the time of the marriage of his mother to Murray was four and a half years of age. Clyde Murray after his marriage enlisted in the army, representing himself to be a single man, and took out war risk insurance in the sum of $10,000. Lloyd D. Murray, a brother, was named beneficiary in the insurance policy. About that time Lloyd D. wrote to Bessie C. a letter stating in substance that he had been named beneficiary and that Clyde had directed him to use $5,000 of the insurance for the education of her son, Harold B., and that she would act jointly

with the writer in performing that duty. Later Mrs. Murray applied for an allotment, whereupon Clyde wrote asking her to desist and saying her claim, if pressed, would result in the loss of the insurance, which he said was ''equally divided between you and Lloyd.'' Lloyd D. also wrote Bessie C. to the same effect, saying that she could depend upon him for a square deal. She dropped her application for an allotment. Before his death, however, Clyde Murray wrote Lloyd D., recalling all his requests made in favor of Harold B., saying that he retracted them absolutely. He afterward died. The trial court held on this state of facts that a trust was not established, and plaintiff Harold B. appealed. The Supreme Court of Kansas said that there were two questions: (1) whether there was a trust, and (2) if so, whether it was subject to revocation. The court answered both questions in the negative. The chief justice, who wrote the opinion of the court, dissented citing 39 Cyc. 34; *Northwestern Masonic Aid Ass'n v. Jones,* 154 Pa. St. 99; 39 Cyc. 73; *Coyne v. Supreme Conclave, I. O. H.,* 106 Md. 54; *Kendrick v. Ray,* 173 Mass. 305; the note in 14 Anno. Cas. 872; *Miles v. Miles,* 78 Kan. 382, 96 Pac. 481; *Reddy v. Graham,* 110 Kan. 753, 205 Pac. 362. Two of the seven judges joined in the dissent of the chief justice. The case is not controlling here since the donor exercised the supposed power to revoke prior to his death.

We have not discussed all the cases which appear in the briefs. The above are most relied on. No one of them is decisive. The question is whether the interest of the trustee in these insurance policies constituted property such as clothed the supposed trust with a body visible to the judicial eye. A consideration of the simple uncontradicted facts may clarify. In the beginning Knowlton L. Ames had possession of these insurance policies. They were payable to his estate. He reserved the power to change the beneficiary. He

paid the premiums. These were his policies, his property, and his right of property therein was absolute.

This was the situation on December 2, 1930, when the writing designated a "life insurance trust agreement" was executed. That instrument and the amendments thereafter made were under seal. Knowlton L. Ames was described therein as the "Assured." The Central Trust Co. was described as the "Trustee." The writing recited that the trustee was an Illinois corporation authorized to accept and execute trusts. It recited that the assured "desires to create a trust of the proceeds of certain insurance policies upon his life," as described in a schedule attached. It provides that "the Assured hereby deposits said policies with said Trustee." The allegations of. the amended and supplemental bill show that the policies were by the assured deposited with the trustee as agreed. The assured also promised to cause the insurance companies issuing the policies to make the proceeds thereof becoming due by reason of the death of the assured payable to the trustee, or its successor, as beneficiary of the policies and of the proceeds. The assured caused the companies to comply with this agreement. He agreed in the writing to pay the premiums, and he thereafter paid them. The trustee on its part agreed to keep these policies during the lifetime of the assured until the assured should in writing otherwise direct, and upon request in writing by the assured and upon the payment to the trustee of reasonable compensation for services theretofore rendered, the trustee agreed to deliver up the policies. These are the only obligations which under the terms of the writing the trustee undertook to perform during the lifetime of the assured. Upon the death of the assured, the writings provide, the trustee shall assume active duties which are described in detail.

The writings recited in detail the powers reserved to the assured, which are as stated in the amended and

supplemental bill and as we have already described. The bare fact that Ames reserved the power to revoke the trust would not invalidate it. The authorities are all to that effect. The power to revoke necessarily implies that the thing to be revoked has already come into existence. Knowlton L. Ames died without exercising his power of revocation. These powers which he reserved were without question "property rights." He could have taken back that which he had given, but he did not exercise that power.

What was the nature of the right granted to the trustee? What did the trustee take? First, it took possession of the policies. It became a bailee. It had a right to reasonable compensation. It was a bailee for hire with all the legal rights and liabilities which arise out of that relationship. As against a wrongful taker it could have maintained an action of replevin, or as against one who converted the policies it could have maintained an action in trover. Secondly, it took the right to receive the proceeds of the policies. This right, it is true, might be revoked, but even the right of revocation was not absolute. There was a condition precedent named in the writings, namely, that the compensation of the trustee should first be paid. We think, too, that a necessary condition precedent must have been compliance with the rules of law in that regard under the provisions of the statute, if any, of the States in which the insurance policies were issued. What those were is not averred in the amended and supplemental bill.

The right of Ames to revoke was not absolute. The trustee was not a mere beneficiary. It did not in this case take a mere expectancy as in the cases cited by complainants. The trustee was a beneficiary named pursuant to the terms of a contract under seal and executed for a valuable consideration, and the contract was in part executed by the trustee, it having entered

upon the fulfillment of its promises under the terms of the contract.

The legal title to these policies was somewhere. Where was it? Manifestly, it was either in Knowlton L. Ames or in the trustee. Ames by a writing under seal had divested himself of the title. He had substituted for himself his trustee. It is true that his action was revocable. He could on the performance of conditions precedent take back the right of possession and the right to receive the proceeds. He could upon compliance with conditions precedent take back and place anywhere he pleased the legal right to receive the proceeds of the policies upon maturity. Until he exercised that power the trustee held, as it seems to us, the legal title to these policies in trust for the parties named in the trust agreement. In other words, the result of the contract between the insurance company and the assured and the contract between the assured and the trustee was to constitute the trustee a donee beneficiary under the law. See Restatement of the Law of Contracts, vol. 1, sec. 133, p. 151.

For the reasons indicated the decree is affirmed.

*Affirmed.*

McSurely, P. J., and O'Connor, J., concur.