HARJO v. FOX.

No. 30989. Feb. 15, 1944.

Rehearing Denied March 7, 1944.

*146 P. 2d 298.*

Joseph C. Stone and Chas. A. Moon, both of Muskogee, for plaintiff in error.

Speakman & Speakman, of Sapulpa, and Clark Nichols, Jr., of Oklahoma City, for defendant in error.

HURST, J. This is a suit to recover one-half the proceeds of a life insurance policy. The principal questions presented are whether, under the terms of the policy, the consent of the Secretary of the Interior was necessary to give validity to an attempted change of beneficiaries, and, if so, whether such consent could be given after the death of the insured.

In 1924, Sandy Fox, a wealthy Creek Indian whose funds are under the control of the Secretary of the Interior, caused an insurance policy in the sum of $25,000 to issue upon the life of Legus Harjo, his sister's husband. All premiums thereon until the death of Harjo in 1937 were paid by Fox from his restricted funds. The policy provided that the insured, Legus Harjo, might from time to time "with the consent of the then Secretary of the Interior of the U. S. A., duly evidenced in writing and only with such consent" change the beneficiary by filing a written request therefor with the company. The policy also provided that the consent of the Secretary was required before the insured could borrow money on the policy, or reinstate, surrender, or assign the same. The original beneficiaries were the wife and son of the insured, but after their deaths the beneficiaries were changed and the policy made payable to "the then Secretary of the Interior of the United States of America for the use and benefit of" plaintiff, Mina Harjo, daughter of Legus

Harjo, and defendant, Mary Fox, wife of Sandy Fox. These latter beneficiaries are also full-blood Creek Indians.

In 1937, Sandy Fox became estranged from his wife and brought suit for divorce. On June 29, 1937, while the action was pending, Legus Harjo, joined by Sandy Fox and obviously at his request, wrote a letter to the Superintendent of the Five Civilized Tribes in which he stated that it was his desire to eliminate Mary Fox as a beneficiary, leaving the proceeds of the policy payable solely to Mina Harjo. The Superintendent, in accordance with his regular practice, referred this request to the Probate Attorney for investigation and recommendation before forwarding it to the Secretary of the Interior for approval. On August 27, 1937, before the investigation was completed and before either the insurance company or the Secretary of the Interior learned that such a request had been made, Legus Harjo died. On September 11, 1937, Sandy Fox, having become reconciled with his wife, appeared at the agency office and signed an instrument revoking his former request for a change of beneficiary, and thereupon the Superintendent and the Probate Attorney dropped the matter. The reconciliation, however, was short lived, and on November 8, 1937, Sandy Fox reappeared at the agency and stated that he had signed the revocation of September 11th only to keep peace in the family. He then executed a new instrument wherein he reversed himself once more and requested that Mary Fox be eliminated as a beneficiary under the policy. Acting upon this request the Superintendent made a report to the Commissioner of Indian Affairs recommending that the application of June 29, 1937, for change of beneficiaries be approved, and on January 24, 1938, the same was approved by the Secretary of the Interior. The insurance company, however, doubting the right of the Secretary of the Interior to consent to the change of beneficiaries after the death of the insured, and fearing double liability, refused to pay the amount due under the

policy to Mina Harjo alone, but instead, on November 10, 1938, issued its check for the same to the Secretary of the Interior "for the use and benefit of Mina Harjo and Mary Fox." The check was cashed and deposited in a special fund pending a decision by the Commissioner of Indian Affairs as to the ownership thereof. On August 12, 1939, the Commissioner of Indian Affairs wrote an opinion, approved by the Secretary of the Interior, holding Mina Harjo alone to be entitled to such fund. On appeal to the Secretary of the Interior, however, the decision was reconsidered and reversed and an order entered giving one-half of the fund to Mary Fox. Mina Harjo then demanded of the Superintendent that, notwithstanding such departmental ruling, he credit her account with the full amount of the fund, and, upon his refusal to do so, instituted this suit to determine the ownership of that part of the fund remaining in the hands of the Superintendent and to recover judgment against Mary Fox for the amount thereof which she had already received, which at the time of the trial amounted to $11,163.07. On trial judgment was for defendant, and plaintiff appeals.

1. Plaintiff first contends that since the proceeds of the policy were payable to the Secretary of the Interior "for the use and benefit" of Mina Harjo and Mary Fox, the Secretary of the Interior, as trustee, was beneficiary, and plaintiff and defendant were only cestuis que trustent. She then argues that the beneficiary was never changed, but only the cestuis que trustent, and that the provisions of the policy requiring the consent of the Secretary of the Interior to a change of beneficiary do not apply to a change of the cestuis que trustent. We do not agree. Whatever the result might be were the parties ordinary individuals, the mere words "for the use and benefit of" do not, under the circumstances here disclosed, create the relation of trustee and cestuis que trustent, in a legal sense, between the Secretary of the Interior and full-blood Indians. The relation of the federal government to members of the Indian race is unique. It is not exactly analogous to any of the ordinary legal relations. It is most closely akin to that of guardian and ward, and Indians and Indian tribes have been referred to by the courts as "wards of the nation," "pupils," and "local dependent communities." Mills, Oklahoma Indian Land Laws (2d Ed.) § 5. Regardless of the nomenclature of the relationship it is now well established that the power of Congress to deal with Indians is plenary, and that it may enact any laws it sees fit for their protection and care. 27 Am. Jur. 568; 31 C. J. 493; Mills, Oklahoma Indian Land Laws (2d Ed.) § 8. In pursuance of the power Congress has vested the Department of the Interior with general control over the affairs of Indians. 27 Am. Jur. 569.

In the instant case it is stipulated that the funds of Sandy Fox were subject to the supervision and control of the Secretary of the Interior. Having such control, the Secretary could, before permitting the expenditure of the funds for premiums thereon, require the policy to contain such clauses for the protection of Sandy Fox and the other Indians as he saw fit. See United States v. Brown, 8 Fed. 2d 564; Sunderland v. United States, 266 U. S. 226, 235, 45 S. Ct. 64, 69 L. Ed. 259; Nail v. American Nat. Bank of Bristow, 22 Fed. Supp. 977, aff., Burgess v. Nail, 103 Fed. 2d 37.

Since the premiums on the policy were to be paid from the funds of Sandy Fox and the beneficiaries were his relatives, the Secretary evidently thought it wise to place some restrictions upon the right of Legus Harjo to change the beneficiaries, and therefore required the insertion of a clause prohibiting any such change without the consent of the Secretary of the Interior. In the light of these circumstances it is apparent that Mina Harjo and Mary Fox, and not the Secretary of the Interior, were the beneficiaries within the meaning of the policy, and that the proceeds thereof were made payable to him "for their use and

benefit," not with the idea of creating any relation of trustee and cestuis que trustent between them, but only because such beneficiaries were full-blood Indians and he desired to make certain that any funds coming into their hands would be placed under his supervision and control.

It follows that Mary Fox could not be eliminated as a beneficiary without the consent of the Secretary of the Interior.

2. Plaintiff urges, however, that the insured had done all in his power to effect the change, and that the consent of the Secretary of the Interior could be given after his death.

The general rule is that where the insured has done all in his power to effect a change of beneficiaries, and after his death only ministerial acts remain to be performed, the courts may regard that as done which ought to have been done and treat the nonperformance of such ministerial acts as immaterial. 37 C. J. 585; 29 Am. Jur. 985; 78 A. L. R. 947 note; New York Life Ins. Co. v. Wilson, 181 Okla. 363, 73 P. 2d 1133. But this rule does not apply where the acts remaining to be performed after the death of the insured are not merely ministerial, but involve the exercise of discretion. 37 C. J. 586; Ringler v. Ringler, 156 Md. 270, 144 Atl. 221; Freund v. Freund, 218 Ill. 189, 75 N. E. 925, 109 Am. St. Rep. 283; Sheppard v. Crowley, 61 Fla. 735, 55 So. 841; State Mutual Life Assur. Co. v. Bessett, 41 R. I. 54, 102 Atl. 727, L.R.A. 1918C, 961.

In the case of State Mutual Life Assur. Co. v. Bessett, above, the court said that the question to be decided in such a case is "whether the acts required, but unperformed, were essential parts of the contract or were ministerial and formal details."

In the case of Ringler v. Ringler, above, the insured was a member of a railroad relief department organized for the purpose of providing benefit insurance for its members. By the terms of the policy the insured could change the beneficiaries only with the approval of the superintendent of the relief department. The insured drew up a written statement purporting to effect a change of beneficiaries, but did not, during his lifetime, obtain the approval of the superintendent. The court in refusing to give effect to the intended change said that in any contest between beneficiaries where the insurance contract provides that the beneficiaries may not be changed unless and until some act involving discretion in respect thereto has been performed by the insurer or its agent, no act on the part of the insured attempting to change the beneficiaries will be regarded as effective unless such discretionary acts "have been performed during the lifetime of the insured," and that this is true "even though the insured has done what he could to effect the change."

There is a sound reason for this distinction between ministerial and non-ministerial acts. The rights of a beneficiary under a life insurance contract vest and become fixed upon the death of the insured. Carson v. Carson, 166 Okla. 161, 26 P. 2d 738; 37 C. J. 580, 581; 29 Am. Jur. 952; Ringler v. Ringler, above; Freund v. Freund, above. The nonperformance of a purely ministerial act can have no effect upon such rights. The only person having discretionary power to decide who the beneficiary shall be has already made his choice. The ministerial acts remaining to be performed are a matter of certainty, requiring only time for their completion. On the other hand, discretionary acts determine who the beneficiary is to be, and if their performance were permitted after the death of the insured, the rule that the rights of the beneficiary are fixed at such time would be destroyed, for the question of who the beneficiary was to be would depend upon a discretionary decision to be made after the death of the insured.

Thus, in the instant case, at the time of the death of Legus Harjo the question of whether the Secretary of the Interior would consent to his request for change of beneficiaries remained entirely undecided. The matter, at such time, had not

even been presented to the Secretary, but awaited the outcome of an investigation then being conducted by the Probate Attorney. Such consent, involving the exercise of discretion and not having been given prior to the death of the insured, could not be given thereafter.

3. Plaintiff finally contends that the provisions of the policy relating to change of beneficiary were for the sole benefit of the company, and that the company waived the same by paying out the proceeds of the policy after the death of the insured. We are committed to the rule that the rights of a third person, named as beneficiary in an insurance policy such as this, vest upon the death of the insured, and that the insurer may not, after the death of the insured, destroy such vested rights by waiving its rights to insist on the provisions of the policy with reference to a change of beneficiary. Carson v. Carson, above.

The judgment is affirmed.

CORN, C.J., and RILEY, OSBORN, BAYLESS, DAVISON, and ARNOLD, JJ., concur. GIBSON, V.C.J., and WELCH, J., dissent.

---

GIBSON, V.C.J. (dissenting). Plaintiff, Mina Harjo, contends that the Secretary of the Interior actually was the legal beneficiary within the meaning of the insurance contract, and was trustee of the fund for the ultimate beneficiaries who were in all legal intent and purpose his cestuis que trustent, and that there was no legal reason to prevent the insured from changing the ultimate beneficiaries without consent of anyone.

And further, since the insured had made his written request to the trustee for a change of the beneficiaries of the trust, the insured, who was the trustor, had done all within his power to change the beneficiaries, and that such change was fully and legally effective.

This case, says plaintiff, does not call for the application of the general rule governing the change of beneficiary under the ordinary clause reserving such right, but is governed by the laws pertaining to the change of beneficiaries of an express trust of the contingent or anticipated variety.

I agree with plaintiff that according to the terms of the insurance contract the Secretary of the Interior was made the legal beneficiary of the policy with authority to accept payment of the insurance as trustee for the use and benefit of Mina Harjo and Mary Fox. In the absence of a subsequent designation of another beneficiary trustee by the insured Legus Harjo and the approval thereof by said Secretary, the latter was the only party authorized to accept payment of the insurance.

The creation of such a trust in the proceeds of a life insurance policy is well recognized. It may be created by a declaration in the policy or by collateral declarations from which the intention to create a trust appears, such as an agreement between the insured and the designated beneficiary that the latter shall pay the proceeds over to a third party. 65 C. J. 300, § 70. Here, the policy contained the express provision that the trustee beneficiary pay the proceeds to third parties.

In the instant case, the Secretary of the Interior by the terms of the policy became the trustee, under an express trust, of the proceeds of the policy, for the benefit of the cestuis que trustent named in the insurance contract.

In legal significance this case is not unlike Stowe v. Phinney, 78 Me. 244, 3 Atl. 914, wherein it was held as follows:

"By the terms of a life insurance policy, the insurance company promised to pay to the assured, his executors, administrators, or assigns, for the sole use and benefit of his four children, therein named, and the survivor or survivors of them, the amount expressed in the policy, after deducting therefrom any indebtedness the company might have on account of the contract, within 90 days after notice and proof of death. Held,

(1) that the insurance, although for the sole use and benefit of the children, was payable, not to them, but, by the expressed terms of the contract, to his own legal representative, who, upon payment of the insurance, would become a trustee, under an express trust of the money thus collected for the cestuis que trust; (2) that the administrator of the assured was the only proper party to maintain an action at law upon the contract;".

To the same effect is Gould v. Emerson, 99 Mass. 154, 96 Am. Dec. 720.

Contrary to defendant's contention, the mere fact that the Secretary of the Interior, by virtue of 47 Stat. 777, exercises supervisory control over the funds and securities belonging to restricted Indians and coming into his hands, makes the Secretary nonetheless a trustee in this case. However, the legal effect of the trust with reference to the trustee's duties and powers obtaining in the ordinary case may be modified, enlarged, and controlled generally here by the supervisory powers resting in the Secretary by virtue of the Act of Congress, supra.

The reservation in an insurance policy of the right to change the beneficiary named therein ordinarily contemplates merely the right of the insured to designate another as the party to whom the insurer may pay the insurance money. Here, no change in this respect was attempted. The insured attempted to change, or, more specifically, to eliminate, one of the parties designated in the insurance contract as a potential beneficiary of the proceeds thereof coming into the hands of the party named in the policy as the one to whom the insurance money should be paid.

The contract created an express trust to take effect in the future without vested interest in the cestuis que trustent. This case is, therefore, controlled by the laws relating to the change of beneficiaries of trusts, not the change of beneficiaries named in a life insurance policy, subject, however, to such of the powers of the Secretary of the Interior that may have intervened.

The insurance contract did not vest a present interest in Mina Harjo and Mary Fox for the reason that the insured could have abandoned the same at any time and thereby render it inoperative. The trust did not become executed until the death of the insured, at which time the funds, the subject of the trust, became legally available. In such case the insured may at any time change the beneficiary of the potential trust, without consent of anyone, and in any manner by which his intent may be ascertained.

The situation here is somewhat similar to that in Staples v. Murray, 124 Kan. 730, 262 P. 558, wherein the insured and the named beneficiary agreed that one-half of the insurance money when collected should be applied by the beneficiary to the use and benefit of plaintiff. By letter to the named beneficiary who was the trustee, the insured revoked the agreement aforesaid, and his request that plaintiff receive a portion of the proceeds of the policy. Plaintiff in that case, the potential cestui que trust, attempted to establish a trust in the insurance money when it was collected. The court held that the request of the insured, agreed to by the beneficiary named in the policy, that plaintiff receive a portion of the insurance money did not vest a present property right in plaintiff; that it did not amount to a complete and executed trust beyond the power of revocation by the settlor.

And so it was here. Legus Harjo, the settlor, had the right to revoke the trust at any time. His letter to the Superintendent for the Five Civilized Tribes accomplished that end so far as Mary Fox was concerned, subject, however, to the veto power of the Secretary of the Interior.

My recognition of the Secretary's power to disapprove the change in the beneficiaries of the trust is prompted by the terms of the insurance contract and surrounding circumstances as disclosed by the record. In my opinion the evident purpose was to retain in the Secretary the power to control the dis-

tribution of the insurance money to those beneficiaries named in the trust agreement or to confine any newly named beneficiaries to Indians whose funds and securities were subject to the supervision of the Secretary of the Interior. The insurance premiums were paid on behalf of Legus Harjo from the restricted funds of Sandy Fox. Those premiums actually constituted mere gifts by Sandy Fox to Legus Harjo, made with the approval of the Indian Agency. But those gifts constituted funds in the hands of the Secretary of the Interior belonging to a restricted Indian, Legus Harjo, and were applied in behalf of Harjo pursuant to the powers granted said Secretary by the Act of Congress aforesaid.

The Secretary of the Interior therefore had the power to reserve the right to disapprove any change in the beneficiaries of the trust as made by Legus Harjo, the settlor. That right was reserved. And it appears that the Secretary actually approved the change in beneficiaries of the trust as made and requested by Legus Harjo, but subsequently reversed his action on the advice of official counsel who based his opinion wholly upon the law relating to change of the ordinary beneficiary of a life insurance policy. The legal reason for the Secretary's withdrawal of his approval, and his subsequent refusal to approve the change, was summed up as follows:

"Therefore, in the instant case where the insured, even though through ignorance and lack of proper instruction, took none of the steps required of him under the express terms of the insurance contract; where after his death the discretionary decisions of the Secretary and, under the improper procedure here customarily used, of the superintendent, still remained to be made; where the necessary advice to the company was not given by the Department until after payment of the insurance money and even then without use of the required form; it is my conclusion that the attempted change of beneficiary did not go beyond the stage of a mere expression of intent and is, therefore, wholly ineffective in law. The claim of Mary

Fox to one-half of the insurance proceeds is therefore recognized and the departmental decision of August 12 is hereby reversed."

Said opinion was based on a rule of law not applicable in this case, and produced an erroneous conclusion on the part of the Secretary of the Interior.

The trial court's judgment herein was specifically based upon that opinion, and was therefore erroneous, and should be reversed.

However, I do not say that we can control the discretionary powers of the Secretary of the Interior as conferred by the Acts of Congress. But I do think that under the law obtaining here, his discretionary power to approve or reject the change in beneficiaries of the trust as made by Legus Harjo could be exercised subsequent to the latter's death.

I therefore respectfully dissent.