Lewis, et al. *v.* Lewis, Admr., Etc.

No. 41594          December 12, 1960          125 So. 2d 286

*Gilbert & Cameron, Thomas K. Holyfield,* Meridian, for appellants.

*Snow, Covington & Shows,* Meridian, for appellee.

GILLESPIE, J.

In Mahaffey v. First National Bank, 231 Miss. 798, 97 So. 2d 756, we held that the liability of a father to support his child does not survive his death in the absence of a contract imposing such liability. The case now before us involves a contract between the husband and wife prior to divorce, and which was approved by decree of the court. The contract provided for the payment to the wife for the support of two minor children a stated sum monthly with the provision that "The payments herein obligated to be made shall cease as to each child when she attains her twenty-first birthday, or marries, or dies." The question is whether the quoted terms of the contract, along with the other provisions, impose liability upon the husband's estate to continue such support payments after his death.

The material facts were stipulated by the parties and are not in controversy. W. Jack Lewis and Bess Lassiter Lewis were married on October 31, 1934. There was born of the marriage two children, namely, Katherine Ann Lewis, and Marguerette Gibson Lewis.

W. Jack Lewis and his wife, Mrs. Bess Lassiter Lewis, separated sometime prior to January 29, 1950. On July 29, 1950, Mrs. Bess Lassiter Lewis filed her petition in the Chancery Court against W. Jack Lewis, praying that the defendant be required to provide a reasonable sum each month for the support of herself and children. The defendant filed his answer and supplemental answer to said petition. When the matter was reached for trial, the parties appeared before the court and announced that they had agreed upon a settlement and submitted to the court an executed copy of the following agreement:

"THIS CONTRACT AND AGREEMENT is entered into on this the 9th day of June, 1951.

"MRS. BESS LASSITER LEWIS AND W. JACK LEWIS are married, one to the other, and lived together as husband and wife for a number of years.

"There were born to the parties two children, Katherine Ann Lewis, age fifteen years, and Marguerette Gibson Lewis, age six years. The parties are now living separate and apart and it is apparent to them that they cannot again live and co-habit as man and wife.

"In order to avoid litigation, and in order to definitely fix the status and financial responsibility of the parties as to one another and as to the children aforesaid, and, in consideration of the agreements and covenants herein set forth, the parties agree as follows:

"Other than as stated herein, the parties have no financial claim as to the other and all obligations as to each other not provided for herein are given up and relinquished.

"W. Jack Lewis, hereinafter sometimes referred to as party of the first part, agrees, binds, and obligates himself to pay to Mrs. Bess Lassiter Lewis, hereinafter sometimes referred to as party of the second part, the sum of SIXTY-TWO & 50/100 DOLLARS ($62.50) each month for the care, maintenance, support and upkeep of Katherine Ann Lewis, and SIXTY-TWO 50/100 DOLLARS ($62.50) each month for the care, upkeep, maintenance, and support of Marguerette Gibson Lewis. The payments herein obligated to be made shall cease as to each child as and when she attains her twenty-first birthday, or marries, or dies. Payment for each child shall be made only so long as she is under the supervision of her mother and no payment shall be made for a child who is not living under her said mother's supervision, or, while she is living with her father for a continuous period of 30 days. Payments are to be made on the first day of each month, with the first payment to be made on the first day of July, 1951.

"Party of the first part shall have, and is hereby accorded, the right to have the custody of the named child-

ren either together or one at a time, a minimum of two days each week and shall so have their custody for a thirty day period each year, said period to be during the scholastic vacation period.

"The custody of said children by party of the first part shall not be at such time as will interfere with their regular school attendance or regular church service and Sunday School attendance on Sundays.

"Party of the second part shall not keep the said children away from Meridian for more than thirty (30) days at the time without court order after notice to party of the first part, and never permanently.

"Party of the first part agrees that for the period of the Sixty-two and 50/100 dollar payments above provided for, he will pay reasonable medical bills for necessary medical treatment of the said children, it being agreed that the doctor who shall treat them shall be mutually agreeable to the parties hereto.

"Party of the first part shall, and binds himself to, deed to the named children, as tenants in common, a one-half interest in and to the home occupied by party of the second part described as follows: (Description omitted)

"Until Marguerette Gibson Lewis reaches her twenty-first birthday, party of the first part shall pay one-half of the ad valorem taxes and insurance on said property and so long as party of the second part lives in the said house and remains unmarried to anyone other than party of the first part, and so long as she holds the legal title to a one-half interest in the described property, party of the first part shall pay the other one-half interest of the said taxes and insurance premiums on said property.

"The one-half interest in the described property to be deeded to the children aforesaid shall not be sold until Marguerette Gibson Lewis reaches her twenty-first birthday and party of the second part binds herself that she will not sell the one-half interest in the

property she holds until Marguerette Gibson Lewis reaches her twenty-first birthday.

"Death or marriage of either of the children shall relieve party of the first part as to any payments herein obligated to be paid for the benefit of such of said child or children who may die or marry.

"Party of the first part agrees that he will make, or cause to be made, at his own expense reasonable repairs to the residence now on the described property and keep the same in reasonably habitable condition until Marguerette Gibson Lewis reaches her twenty-first birthday, but, it is understood he is not obligated to make any structural changes in said residence, and for said period no structural changes shall be made to the said residence.

"Should the residence on the described premises be destroyed by fire or windstorm, the insurance carried on the said residence shall be used in the reconstruction of another residence thereon.

"Neither of the parties hereto obligates himself or herself as regards a divorce and the matter of divorce is left entirely within the discretion of the parties. Should party of the second part be divorced from party of the first part, and marry someone else, then party of the first part's obligation as to the one-half interest in the real property herein described owned by party of the second part shall immediately cease as to her said one-half interest."

Thereupon the court entered its decree dated June 9, 1951, finding that the said settlement agreement was reasonable and proper and approving the same and adopting the same as its decree. Later the said Mrs. Bess Lassiter Lewis filed suit against her husband, W. Jack Lewis, for a divorce. The said W. Jack Lewis made no appearance to the suit and under date of November 17, 1952, the court rendered a decree granting unto the said Mrs. Bess Lassiter Lewis an absolute divorce from the defendant, W. Jack Lewis. There was

written into the decree the following: "An agreement between the parties touching support and custody of children by decree entered, no order is entered or made here."

On the 26th day of February, 1953, W. Jack Lewis and Miss Bettye Keyes were married. W. Jack Lewis died on August 30, 1958, at which time he was living with his wife, Mrs. Bettye Keyes Lewis.

On August 5, 1955, Mrs. Bess Lassiter Lewis filed a petition praying that the aforesaid settlement agreement be modified as to the custody of said children to the extent that the provision therein granting W. Jack Lewis the right to the custody of said children for a 30-day period each year be eliminated therefrom, and the court decreed accordingly on August 23, 1955.

W. Jack Lewis complied with the provisions of the aforesaid settlement agreement in all respects to the date of his death except as to the payment of ad valorem taxes on the home for the year 1958, which taxes were paid by the said Mrs. Bess Lassiter Lewis. The administratrix of the estate of W. Jack Lewis declined to make the payments provided for in said settlement agreement accruing subsequent to the date of the death of the said W. Jack Lewis. On April 18, 1959, Mrs. Bess Lassiter Lewis, individually, and as guardian of Marguerette Gibson Lewis, a minor, and as the mother and next friend of said minor, filed two petitions in the matter of the estate of W. Jack Lewis, deceased, seeking an order requiring the administratrix to pay the ad valorem taxes and insurance premiums and monthly payments for the support and maintenance of said children accruing subsequent to the death of W. Jack Lewis, deceased. The grounds of the petition were that the obligations of the said W. Jack Lewis in said settlement agreement survived his death. It was the position of the administratrix that the obligations of the said W. Jack Lewis in the aforesaid settlement agreement terminated upon his death.

This was the issue as presented for the determination of the court. Claims on behalf of the children for sums accruing subsequent to the death of said W. Jack Lewis were duly and properly probated.

On proper petition presented to the court, the court fixed the amount of one year's support for the widow and the minor, Marguerette Gibson Lewis, in the sum of $2400 to be paid to the widow, Mrs. Bettye K. Lewis, and the sum of $1200 to be paid for the use and benefit of the minor, Marguerette Gibson Lewis, pursuant to Section 561 of the Mississippi Code of 1942.

After a full hearing on the petitions to require the administratrix of the estate of W. Jack Lewis, deceased, to pay the ad valorem taxes and insurance premiums and monthly allowances for the support of the children, the court entered its decree denying the prayer of said petitions and dismissing the same. At the time of the final hearing, the minor, Marguerette Gibson Lewis, was under the age of 21 years and was unmarried, and was living with her mother, Mrs. Bess Lassiter Lewis, and was under the supervision of her mother. At said time, Mrs. Bess Lassiter Lewis was unmarried and had remained unmarried since the time of her divorce from the said W. Jack Lewis. At said time also, the said Mrs. Bess Lassiter Lewis held the legal title to one-half interest in the property described in the settlement agreement and her two children, Katherine Ann Lewis, and Marguerette Gibson Lewis, held title to the remaining undivided one-half interest in said property. Katherine Ann Lewis was unmarried and became 21 years of age on May 15, 1957. From the decree dismissing the aforesaid petitions, the petitioners prosecute this appeal.

While *Mahaffey* was the first judicial announcement in this State of the rule that the liability of the father to support his child does not survive his death in the absence of a contract imposing such liability, it can probably be safely assumed that such rule has generally

been recognized by the bench and bar throughout the years. After considering the cases from other jurisdictions and the contrariety of opinion prevailing elsewhere, the Court, in *Mahaffey*, said: "We think the better rule is that the liability of the father to support his child does not survive his death in the absence of a contract or agreement imposing such liability."

If there is an obligation to continue payments after death of W. Jack Lewis it must be in accordance with the express provisions of the contract or manifested by fair implication, considering the contract by its four corners together with the circumstances of the parties. Since the contract does not refer to the death of W. Jack Lewis or to his executor or administrator, it seems clear that there is no express obligation that the payments survive his death.

In determining whether the contract manifests such obligation by fair implication it must be considered that when the contract was made the separate support and maintenance suit had been filed and W. Jack Lewis had answered. The contract in question was executed on June 9, 1951, and the same day a decree was entered disposing of that litigation and approving the contract. The contract recited that it was entered into "to avoid litigation." This was litigation in which the court could not require the payment of child support after death of the defendant, W. Jack Lewis. While the contract provided that the child support payments should cease as to each child if she (a) attains 21 years of age, or (b) marries, or (c) dies, or (d) fails to live with her mother, these provisions are mere limitations on the obligation to pay child support and in our opinion it cannot be said that such provisions manifest any intent to impose an obligation that the payments survive the death of W. Jack Lewis. To the contrary, the contract contains several provisions indicating that it was made in contemplation of W. Jack Lewis being alive during its per-

formance rather than being made with his death being within the contemplation of the parties.

■■ ■ In our opinion the provisions of the contract do not purport to extend the payments for child support subsequent to the death of W. Jack Lewis. Since the law does not impose any such liability we think it can be imposed only when the contract affirmatively does so either by express terms of fair implication.

We think the chancellor correctly decided the issue and that his decree should be affirmed.

Affirmed.

*McGehee, C.J.,* and *Lee, Kyle* and *McElroy, JJ.,* concur.

HOLMES, J., dissenting:

I am, with deference, unable to bring myself in accord with the majority view.

The authorities on the general question of the liability of a father for the support and maintenance of his minor children after the date of his death are not in accord. However, in the recent case of Mahaffey v. First National Bank, 231 Miss. 798, 97 So. 2d 756, this Court has definitely approved and adopted the view that the liability of a father to support his minor child may be made to survive his death by contract or agreement imposing such liability. The solution of the question here presented, therefore, turns upon the interpretation to be placed upon the contract entered into in writing on June 9, 1951, between Mrs. Bess Lassiter Lewis and W. Jack Lewis, who were then married but living apart.

The contract obligated W. Jack Lewis to pay to his wife for the support of the two minor children of the parties a stated sum per month beginning July 1, 1951, and fixed the duration of such payments as follows: "The payments herein obligated to be made shall cease as to each child when she attains her twenty-first birthday, or marries, or dies." The plain import of this language

of the agreement was to obligate the father, W. Jack Lewis, to make the monthly payments for the support and maintenance of his said children until each became twenty-one years of age, or married, or died. Thus the contract enumerated the contingencies upon the happening of which the payments were to cease. The death of the father was not enumerated as one of these contingencies. Under the doctrine of inclusio unius est exclusio alterius, the certain designation of the contingencies upon which the payments were to cease was an exclusion of other contingencies, and was, therefore, an exclusion of the death of the father. The terms of the agreement imposing upon the father the obligation to make the payments until each of his children became twenty-one years of age are plain and unambiguous.

If it be conceded, however, that the contract as to the duration of the payments is susceptible of more than one construction, then in order to ascertain the intention of the parties, it should be construed in the light of the circumstances surrounding the parties at the time, and it becomes the duty of the court to consider the nature of the agreement, together with all the facts and circumstances leading up to and attending its execution, the relation and condition of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. 17 C.J.S., Contracts, pages 745, 746, 747. What then were the circumstances surrounding the parties at the time, the relation and condition of the parties, and the apparent purpose of making the contract?

W. Jack Lewis and Mrs. Bess Lassiter Lewis were married but were living apart, and it was recited in the contract "that they cannot again live and cohabit as man and wife." Mrs. Lewis had sued her husband for the support and maintenance of herself and the two children born of their marriage. The contract was a settlement agreement arrived at between the parties before entering upon the trial of the case. It is manifest

from the circumstances surrounding the parties at the time, and from the relation and condition of the parties, and the purpose and nature of the agreement, that the father, W. Jack Lewis, wanted to provide for the support and maintenance of his children during their minority. He was careful to enumerate the conditions upon which the support payments would cease. He could have, of course, by express terms agreed that the contract should be a strictly personal one, terminating upon his death. This, however, he did not do. He no doubt had in mind that the need of a child for food and shelter and other exigencies of life do not end with the death of the father. He therefore made no provision in the contract that the monthly payments should terminate upon his death. On the contrary, his agreement is in plain and unambiguous language and was definite as to the payments and obligations required of him, and it fixed the contingencies upon which such liability would cease, and this without respect to the date of his death. Thus he entered into a solemn contract imposing liability upon him for the support of his children, which liability survived his death. Mahaffey v. First National Bank, supra.

It is generally recognized among the authorities that a father may enter into a contract to make periodic payments for the support of his child during the minority of the child, or for a fixed period, or until the child reaches a certain age, and that the obligation thereunder survives the death of the father and becomes binding on his estate.

In 17A Am. Jur., Divorce and Separation, Section 910, is found the following: ''Notwithstanding the conflict of judicial opinion as to whether, under provisions in divorce decrees for regular periodic payments of alimony, the obligations thereunder survive the death of the husband and become binding on his estate, it is generally recognized that the husband may, by contract, provide for periodic payments during the life of the wife so as to make such payments a continuing charge on his estate

where he dies before she does. Thus, an agreement for monthly payments until the death of the wife creates a continuing obligation which survives the death of the husband. The fact that such an agreement is incorporated in a divorce decree or that the decree provides for payments substantially in accord with the agreement does not alter the rule."

In an annotation appearing in 18 A.L.R. 2d, page 1131 et seq., appears the following: "A provision in a divorce decree that the husband shall make periodic payments for the support of a child 'during minority' has been held to manifest the court's intention that the payment shall continue during such minority even though the father dies in the meantime."

Further in said annotation, at page 1132, is the following: "In Smith v. Funk (1930), 141 Okla. 188, 284 P. 638, a separation agreement and property settlement provided that the wife should have the custody of three minor children and that the husband should pay the wife $50 per month for the support of each child *during minority*. The Court, in granting the divorce, expressly provided that the agreement was 'in all matters and things fully ratified and confirmed, and the provisions thereof made a part of the decree as though herein fully set out.' It was held that the wife had a valid claim under the judgment against the decedent's estate for child support due after the husband's death." (Emphasis ours)

In Silberman v. Brown (1946), 72 N. E. 2d 267 (Ohio), where the obligation expressed in a separate agreement incorporated in a divorce decree gave the wife the custody of three children and provided that the father should support said three children *until they reached the age of eighteen years,* it was held that the contractual obligation to make the payments survived Silberman's death.

In Simpson v. Simpson, (Fla.), 108 So. 2d 632, it was held that the obligation of the father to assume re-

sponsibility for support payments to his child *throughout a given period of time* was not invalidated by the father's death.

In the case at bar, it is abundantly clear from the plain and unambiguous language of the contract, and from the conditions and circumstances surrounding the parties at the time, and from the purpose and nature of the contract, that Mr. Lewis intended that the support payments should continue for the time specified in the contract, and this without regard to the date of his death.

The fallacy of the majority view is that they would undertake to write into the contract a provision that the support payments would terminate upon the father's death. The contract contains no such provision. In other words, the majority would make for the parties a contract which they themselves did not see fit to make. This does violence to the principle that it is not the function of the courts to make contracts for the parties but rather to give effect to them as written. It was aptly said in the case of Roberts v. Corum, 112 So. 2d 550, "contracts are solemn obligations and it is not the function of the courts to make contracts for parties but rather to give effect to them as written."

In the light of the views hereinbefore expressed, I am with deference of the opinion that the decree of ,the court below should be reversed.

*Hall, Arrington* and *Ethridge, JJ.,* join in this dissent.