492 P.2d 444

Jane Farrar GORDON, as Guardian of the Person and Estate of Brian Farrar Brach, a minor, and Jane Farrar Gordon, in her own right, Appellant,

v.

The VALLEY NATIONAL BANK OF ARIZONA, Executor under the Will of Frank Vincent Brach, Jr., Deceased, Appellee.

No. 2 CA–CIV 1005.

Court of Appeals of Arizona, Division 2.

Jan. 13, 1972.

Rehearing Denied Feb. 18, 1972.

Review Denied March 21, 1972.

Chandler, Tullar, Udall & Richmond by Joseph R. McDonald, Tucson, for appellant.

Johnson, Darrow, Hayes & Morales by John R. Even, Tucson, for appellee.

HATHAWAY, Judge.

Frank Vincent Brach, Jr., a resident of Pima County, Arizona, died in 1969 and Valley National Bank was appointed executor of his estate. The decedent was survived by his second wife and two children, issue of the first marriage. The appellant was his first wife and is the mother of the two children. One of these children, Brian, is apparently 18 years of age. He· probably will not be self-supporting during his lifetime.

At the time of his death, the decedent was subject to a 1965 Illinois court order requiring him to pay the sum of $80 per week for support of Brian. The appellant timely presented a claim to the executor for future support payments at the rate of $80 per week, measured from the date of the decedent's death and for the life expectancy of the child. The claim was rejected whereupon suit was filed.

The complaint set forth four counts.[1] Count One claimed support of $80 per week

---

1. Count Two is not involved in this appeal and is still pending in the trial court. However, the judgment as to the other three counts has the requisite Ariz.R.Civ. P. 54(b), as amended, 16 A.R.S., imprimatur of finality.

for the minor son, or in the alternative the sum of $77,230, representing support for the child's life expectancy reduced to its present worth. Count Three alleged an agreement of the decedent to pay the sum of $80 per week for the minor's natural life and a breach thereof. Count Four sought recovery of the expenses incurred by the appellant and her two sons in connection with their attendance at the decedent's funeral in Tucson, Arizona. (They were living in California).

The bank subsequently moved for summary judgment as to these three counts, based upon the pleadings, certain Illinois court orders appended to the motion, and the appellant's deposition. Extensive memoranda were submitted by both parties as to the survival of support obligations. The trial court, after consideration of the entire file, granted the motion, judgment was entered, and this appeal followed.

Appellant's opening brief is devoted solely to the child support issue and we therefore limit our review accordingly. Miller v. Boeger, 1 Ariz.App. 554, 405 P.2d 573 (1965).

The proposition raised by this appeal has never been decided in Arizona. It is appellant's position that the decedent's death did not terminate the support obligation and that it continued as a charge against his estate. The treatment of the problem in other states has produced a diversity of opinion. See Annot., 18 A.L.R.2d 1126 (1951). Cases holding that the death of the parent who has been ordered to make payments for child support terminates the order with respect to payments accruing after death are: Whitman v. Whitman, 430 P.2d 802 (Okl.1967); Layton v. Layton, 263 N.C. 453, 139 S.E.2d 732 (1965); Rauser v. Rauser, 47 Wis.2d 295, 177 N.W. 2d 115 (1970); Riley v. Riley, 131 So.2d 491 (Fla.App.1961); Cooper v. Cooper's Estate, 350 Ill.App. 37, 111 N.E.2d 564 (1953); Bowling v. Robinson, 332 S.W.2d 285 (Ky. App.1960); Lewis v. Lewis, 239 Miss. 728, 125 So.2d 286 (1960); Byrne v. Byrne, 201 Misc. 913, 112 N.Y.S.2d 569 (1952);

Streight v. Streight's Estate, 226 Or. 386, 360 P.2d 304 (1961); In re Kerby's Estate, 49 Tenn.App. 329, 354 S.W.2d 814 (1961); Scudder v. Scudder, 55 Wash.2d 454, 348 P.2d 225 (1960); Bailey v. Bailey, 86 Nev. 483, 471 P.2d 220 (1970).

Some courts recognize survival of payment provisions where the support payments are represented by contract and the divorce decree recognizes the existence of the agreement and pronounces judgment thereon. Garber v. Robitshek, 226 Minn. 398, 33 N.W.2d 30 (1948); Hill v. Matthews', 76 N.M. 474, 416 P.2d 144 (1966); Ramsay v. Sims, 209 Ga. 228, 71 S.E.2d 639 (1952); Simpson v. Simpson, 108 So.2d 632 (Fla.App.1959); Hutchings v. Bates, 406 S.W.2d 419 (Tex.1966); Silberman v. Brown, 34 Ohio Op. 295, 72 N.E.2d 267 (1946).

■ We believe the better rule to be that in the absence of either a contract or a statutory provision to the contrary, the obligation to make future child support payments terminates with the death of the obligated parent.

The 1965 Illinois court order provided in pertinent part:

"4. That by agreement of the parties child support payments should be $80.00 a week for the minor child of the parties Brian. . . .

5. The parties have further agreed that the defendant . . . shall place in trust with the Continental Illinois National Bank and Trust Company of Chicago, as Trustee under a Trust Agreement dated September 24, 1965, a copy of which is attached hereto, 2,000 shares of the common stock of E. J. Brach & Sons now held in his name.

\*　\*　\*　\*　\*　\*

IT IS, THEREFORE, ORDERED:

B. That the present Order for child support be modified as of August 17, 1965 so that hereafter the defendant . . . shall pay to plaintiff . . . the sum of $80.00 per week as and for the support of the minor child, Brian. . . .

C. That the defendant . . . shall place 2,000 shares of E. J. Brach & Sons stock in trust with the Continental Illinois National Bank and Trust Company of Chicago, as Trustee under a Trust Agreement dated September 24, 1965, a copy of which is attached hereto and is made a part of this Order."[2]

■ We agree with appellant that blind adherence to a common law rule[3] is not the policy of the courts of this state. Windauer v. O'Connor, 13 Ariz.App. 442, 477 P.2d 561 (1970), vacated on other grounds, 107 Ariz. 267, 485 P.2d 1157 (1971). Our Supreme Court has held that a contractual agreement, incorporated in a divorce decree, to support a child beyond the age of majority is enforceable. Genda v. Superior Court, County of Pima, 103 Ariz. 240, 439 P.2d 811 (1968). Here, however, appellant's own testimony on deposition reflects that there was no contractual undertaking:

"Q Was there ever any agreement that $80 a week would be carried on?

A Well, there was no words. There was no agreement in the sense that he did not say he wouldn't. So, one only assumes by silence that you mean yes.

Q Did you ever ask him if this would go on?

A I never discussed it.

Q Was there any agreement with the attorneys in regard to carrying this on after death?

A No one spoke of death. Neither one of the attorneys spoke of death.

Q Well, on what basis do you feel that the estate owes you, as guardian, $80 a week?

A On the basis that I think Brian should not be the taxpayers' liability."

Appellant places much reliance upon the fact that the Illinois court order recites that the $80 per week support was "by agreement of the parties." We do not import to this language, as appellant would have us do, a contract obligation. A reading of the 1965 order in the Illinois proceedings reflects that it was the culmination of negotiations rather than one based on contract. Under these circumstances, the principle that contract obligations survive as claims against the estate of the decedent is not applicable. In re Kerby's Estate, supra.

Appellant argues that a reasonable inference from the fact that the Illinois decree is silent as to its duration, in the light of the circumstances of the parties, is that the court intended the support payments to continue for the life of the minor. The Washington Supreme Court, in the case of Bird v. Henke, 65 Wash.2d 79, 395 P.2d 751 (1964) held that the phrase "so long as she shall live" unaided by further decretal language clearly expressive of a judicial intent that the alimony obligations were to survive the death of the obligor was insufficient. We agree with the Washington viewpoint that, absent a specific or mani-

2. The trust agreement provided that the trust was irrevocable and unamendable unless the plaintiff or anyone else on behalf of the children filed a petition in any court seeking to increase the support obligation specified in the 1965 court order. It further directed the trustee to pay from income and principal, all bills presented to it for tuition, room and board (except at the mother's home), transportation to and from school, dues and fees, books, and expenses of therapeutic equipment and all medical costs, including

services of psychiatrists, psychologists, medication, hospitalization and dental work, for Brian until his death. The only limitation was that no more than $10,000 per year be expended for the benefit of both sons nor more than $7,000 per year for Brian's benefit after such time as his brother died, attained distribution age or completed his formal education before attainment of such age.

3. The common law rule is that the right to support terminates with the parent's death.

festly clear and unmistakable provision for survival of support payments, they will abate upon the death of a divorced obligor. As stated in *Bird*, supra:

> "We consider this rule a salutory one, if for no other reason than that it encourages the considered judgment inherent in clarity and certainty. It tends to exclude misunderstanding and ambiguity in an area of human relations where the emotions of the moment often conflict with afterthoughts, changing circumstances, death, and the intervention of third party interests. Abandonment of the rule would accomplish no practical result. Watering it down by sophisticated construction of questionable decretal language, however magnanimous the spirit, would lead but to confusion." 395 P.2d at 753.

Nor can we attribute to the word "hereafter" in the Illinois decree a manifestation that support was to survive the death of the decedent. The word "hereafter" indicates direction in time rather than duration and is not synonymous with "forever." McManigal v. Hiatt, 240 Iowa 541, 36 N.W.2d 651 (1949); Dobbins v. Cragin, 50 N.J.Eq. 640, 23 A. 172 (1891). Further, the order recited that the $80 per week was "for the support of the *minor child*, Brian." (Emphasis added).

We believe the trial court correctly determined that, since there was neither a contractual undertaking nor a judicial declaration of intent that support continue after the decedent's death, there existed no charge for support against his estate.[4]

Affirmed.

HOWARD and STEVENS, JJ., concur.

4. Appellant has also urged this court to adopt the theory espoused by one text-writer that "the determining facts should be what equity and fairness demand at the time of the husband's death in the light of the circumstances then prevailing." Clark Law of Domestic Relations § 15.2, p. 507. However, as Professor Clark points out, in states such as Arizona where survival is not permitted as a matter of law, there is no room for construction. Ibid.