Argued and submitted April 25, affirmed July 21, 1980

SINSEL, et al,
*Respondents,*
*v.*
SINSEL,
*Appellant.*

(No. 39883, CA 15408)

614 P2d 115

J. W. Walton, Corvallis, argued the cause for appellant. With him on the brief was Ringo, Walton, Eves & Gardner, Corvallis.

Guy B. Greco, Newport, argued the cause for respondents. With him on the brief was Litchfield, MacPherson, Carstens & Gillis, Newport.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiffs Gerda and Rose Sinsel are the former wife and daughter, respectively, of the late Cleon Sinsel. They brought this suit against defendant Maxine Sinsel, Cleon Sinsel's surviving wife, to impose a constructive trust on insurance proceeds which were paid to defendant as the named beneficiary of a group policy insuring the life of Cleon Sinsel. Defendant appeals from the trial court's decree granting the relief sought by plaintiffs. We affirm.

The marriage of Gerda and Cleon Sinsel was terminated by a dissolution decree dated October 1, 1973.[1] At that time, Rose Sinsel was 12 years old. Cleon Sinsel had designated her as his beneficiary under a group life policy in January, 1973, shortly after Gerda Sinsel had filed her petition for the dissolution of the marriage. The dissolution decree awarded custody of Rose Sinsel and the other minor children of the parties to Gerda Sinsel, and required Cleon Sinsel to pay $40 monthly child support for each child. The decree also provided, as pertinent, that Cleon Sinsel was

> " * * * to continue an insurance policy as good or better than presently carried naming Rose Sinsel as beneficiary and naming Gerda A. Sinsel as Trustee for Rose Sinsel * * *."

Thereafter, Cleon Sinsel married defendant and, in April, 1976, he made defendant his primary beneficiary under the group life policy, in place of Rose Sinsel. Defendant was aware of the dissolution decree's insurance requirement and of her husband's intention to make her the beneficiary of the group life policy. She knew of no other insurance maintained by him for the benefit of Rose Sinsel.

Cleon Sinsel died in January, 1978, and proceeds of $12,050.05 from the group life policy were

---

[1] Gerda Sinsel petitioned for the dissolution, and Cleon Sinsel did not appear in the proceeding.

paid to defendant. She was also paid proceeds of $10,000 as the beneficiary under another policy insuring the life of Cleon Sinsel. At the time of his death, Cleon Sinsel carried no life insurance of which Rose Sinsel was the beneficiary. Rose Sinsel was a minor at the time her father died.

■ Defendant's first argument on appeal is that the dissolution decree did not specify that Cleon Sinsel was to maintain any *particular* insurance policy for Rose Sinsel's benefit, and that the decree is "vague" in that it cannot be ascertained from it *what* policy the words "an insurance policy * * * presently carried" refer to. Therefore, according to defendant, a constructive trust cannot be imposed upon the proceeds of the group life policy.

At the time of the dissolution hearing and the decree, there were two policies in effect insuring the life of Cleon Sinsel. Rose Sinsel was the beneficiary of the group life policy, and, insofar as this record shows, was not the beneficiary of the other policy. In addition to life insurance, Cleon Sinsel and, apparently, the members of his family, were covered by group health and accident insurance. However, it is obvious that the dissolution decree's reference to the insurance "presently carried" could not have meant a health policy, and it necessarily had to mean a life insurance policy. The decree's requirement that Gerda Sinsel be named as trustee for Rose Sinsel under the policy is not consistent with any form of insurance other than life insurance. The testimony of the attorney who represented Gerda Sinsel in the dissolution proceeding was to the effect that the insurance which was contemplated by the decree was the group life policy. In addition, defendant testified in her deposition that Cleon Sinsel understood that the reference to insurance in the dissolution decree meant the group life policy.[2] We accordingly reject defendant's argument

[2] At trial, defendant contradicted her deposition testimony on this point. In our view, however, the deposition is far more consistent with the other evidence and the surrounding circumstances.

that the policy to which the decree referred cannot be ascertained and we agree with the trial court's finding that that policy was the group life policy.

■ Defendant contends that the trial court erred by admitting and considering the "parol testimony" of the attorney for Gerda Sinsel and that of another witness relating to the meaning of the dissolution decree's insurance provision. Defendant's apparent point is that the decree must speak for itself or not at all, and that parol evidence is inadmissible to ascertain its meaning. We disagree. *See Barnes v. Anderson, et al,* 108 Or 503, 510, 217 P 836 (1923).

■■ It is true, as defendant argues, that the dissolution decree did not require Cleon Sinsel to continue to maintain the group life policy for his daughter's benefit *if,* instead, he maintained one "as good or better." Because he did neither, plaintiffs are not precluded from seeking or the court from impressing a constructive trust on the proceeds of the group life policy. Cleon Sinsel's decision not to maintain alternative insurance equal to or better than the group life policy had the effect, under the dissolution decree, of requiring him to continue to maintain the group policy for his daughter's benefit.

■ Defendant next argues that the insurance requirement of the dissolution decree is void, because its effect was to compel Cleon Sinsel to continue paying child support after his death. In *Miller and Miller,* 21 Or App 253, 534 P2d 512 (1975), we stated:

> "In requiring that the husband maintain life insurance for the benefit of the children, the trial court is in effect requiring the husband to make periodic payments which will further ensure the required support and maintenance of the children. Whether it is required as part of a property division or as a form of child support, life insurance is a form of protection which the trial court may require pursuant to ORS 107.105 and 107.108 so long as the required coverage does not extend beyond the age limitations for the children set forth in the statutes." 21 Or App at 259.

In *Miller,* the husband who was ordered to maintain life insurance naming his children as beneficiaries was living at the time of our decision. However, that distinction between *Miller* and this case is unimportant. In both cases, the dissolution decree presumably had the object of assuring that there would be life insurance proceeds as a replacement for child support in the event of the husband's death; in that event, however, the insurer rather than the husband would be responsible for any continued payments for the "support" of the children. We reject defendant's argument.

■    Defendant next argues that a constructive trust on the policy proceeds cannot be enforced against *her,* because she was uninvolved in Cleon Sinsel's diversion of the proceeds from the purpose specified in the dissolution decree. The record shows that defendant was aware of the decree's requirements and of Cleon Sinsel's acts, but does not indicate any wrongful participation by her in those acts.

In *Clearwater v. Wagner,* 272 Or 491, 537 P2d 532 (1975), the plaintiff sought to impress a constructive trust on a boat which she contended had been procured through a series of transactions with funds fraudulently obtained from her. The boat was owned by a person (Wagner) other than the perpetrator of the fraud (Watts). The court stated:

> "The plaintiff must also prove that Wagner had notice of a breach of trust (Watts' unlawful use of plaintiff's money) and that defendant Wagner was not a bona fide purchaser for value of the [boat].
>
> " 'A third person has notice of a breach * * * when he actually knows of the breach, but also when under the circumstances he should know of the breach. It is sometimes said that in the former case he has actual notice and in the later case he has constructive notice. The term "constructive," however, is not a happy one, and its employment generally leads to loose thinking. It seems more accurate to say that a person has notice of a breach of trust when he has actual knowledge of

the breach or when he has knowledge of such facts that he should ascertain by inquiry whether the trustee is committing a breach of trust. * * *" 4 Scott Law of Trusts 2405, § 297 (3d ed 1967).

" 'If the trust property, or its substitute or product, has passed into the hands of a party who obtained the legal title to it and paid value for it, without notice of the existence of the trust and the consequent equitable interest of the beneficiary, the equitable interest is cut off and the legal title holder may retain the property free and clear of any duty toward the beneficiary.' (Footnote omitted.) Bogert, Law of Trusts 600, § 165 (5th ed 1973)." 272 Or at 495-96.

We conclude that the defendant in this case had actual or constructive notice of Cleon Sinsel's acts and of their wrongful nature, and that a constructive trust can properly be enforced upon the property in her possession. *See also Johnson v. Steen,* 281 Or 361, 575 P2d 141 (1978); 5 Scott, Law of Trusts, § 470 (3d ed 1967); Restatement of Trusts, § 168 (1937); *cf. Musselman v. Mitchell,* 46 Or App 299, 611 P2d 675 (1980).

■  Defendant next argues that the imposition of a constructive trust on the proceeds is prohibited by ORS 743.102(1), which provides:

"A policy of group life insurance or the proceeds thereof payable to a person or persons other than the individual insured or his estate shall be exempt from debts and claims of creditors or representatives of the individual insured and, in the event of bankruptcy of the individual insured, from all demands in legal proceedings under such bankruptcy."

Defendant cites no interpretive authority in support of her argument. We do not construe the statute as precluding persons who have *direct* claims to insurance proceeds from asserting those claims; the statute is intended to insulate insurance payments from *general* creditors of the insured, whose claims are not to the proceeds or derived from the insurance itself.

■  Defendant's next argument is that plaintiffs' exclusive remedy was a claim against the estate of

Cleon Sinsel, and that this suit is not available as a substitute for that remedy. We disagree. The proceeds of the group life policy did not pass through the estate of the insured.

■     Defendant's final argument is that the trial court erred by disallowing her demurrer, through which she contended that the complaint failed to state facts sufficient to constitute a cause of action. We disagree.

Affirmed.