Linda ABREGO, Petitioner,

v.

Roy F. ABREGO, Respondent.

No. 75633.

Supreme Court of Oklahoma.

May 21, 1991.

William D. Lunn, Tulsa, for petitioner.

Michael E. Yeksavich, Tulsa, for respondent.

KAUGER, Justice:

The first impression issue presented is whether a lien can be placed on the proceeds of a parent's life insurance policy to compel child support payments. We find: 1) that children seeking parental support are not "creditors" within the meaning of 36 O.S.1981 § 3631;[1] 2) that, insofar as accrued payments remain unpaid at death, an action for child support does not abate on the death of a parent; and 3) that pursuant to 43 O.S.Supp.1989 § 116[2] and this Court's pronouncement in *Yery v. Yery,* 629 P.2d 357, 363 (Okla.1981), a trial court may place a lien of first priority on a parent's pre-existing life insurance policy to secure payment of child support. The lien may encompass accrued payments which remain unpaid at the time of the parent's death and attorney fees and costs. In absence of legislative directive[3] or an agreed settlement,[4] security may not be required for child support payments accruing after a parent's death. The respondent's request for attorney fees on appeal is denied.[5]

## FACTS

After the petitioner, Linda Abrego/mother, and the respondent, Roy Abrego/father were married in 1985, two children were born. When this cause was filed, the children were ages four and five. On March

---

1. Title 36 O.S.1981 § 3631 provides in pertinent part:
"A. When a policy of life insurance is effected by any person on his own life or on another life in favor of some person other than himself having an insurable interest therein, or made payable by assignment, change of beneficiary or other means to a third person, the lawful beneficiary thereof or such third person, other than the person effecting the insurance or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same ..."

2. Title 43 O.S.Supp.1989 § 116 provides:
"The court may order a person obligated to support a minor child to post a security bond, or other guarantee in a form and amount satisfactory to the court to ensure the payment of child support."

3. *In re Estate of Sweeney,* 210 Kan. 216, 500 P.2d 56, 67 (1972); *Bailey v. Bailey,* 86 Nev. 483, 471 P.2d 220, 223 (1970); *Streight v. Estate of Streight,* 226 Or. 386, 360 P.2d 304, 306 (1961).

4. *In re Estate of Sweeney,* see note 3, 500 P.2d at 66, supra; *Bailey v. Bailey,* see note 3, 471 P.2d at 222; *In re Estate of Fessman,* 386 Pa. 447, 126 A.2d 676, 678 (1956); *In re Estate of Kerby,* 49 Tenn.App. 329, 354 S.W.2d 814, 818 (1961).

5. *Rambo v. Hicks,* 733 P.2d 405 (Okla.1986).

31, 1989, the mother filed for a divorce seeking alimony, child custody, child support, and reasonable attorney fees and costs. On May 8, 1989, the trial court ordered the father to pay $443.00 per month as child support and alimony after determining that he earned $1,000.00 a month as a plumbing contractor, and that the mother was paid $300.00 a month as a doctor's assistant. In the spring of 1989, the father was diagnosed with terminal leukemia. He spent several months in the hospital. His hand was amputated; and because of his illness, the father has had difficulty in meeting his child support obligations. On October 25, 1989, the mother filed an application for contempt alleging that the father had failed to pay $2,165.00 in child support. Her application was unresolved when the trial court certified this interlocutory order.

The father owns a term life insurance policy with a face value of $173,000.00.[6] On March 14, 1990, the mother filed a pre-trial motion requesting that the trial court place a lien including future payments and any accrued arrearages on the father's life insurance proceeds to ensure payment of child support during the minority of the children. The mother did not seek to impose a lien on the entire amount of the policy; rather, she sought only the amount of money which would be required to pay the accrued arrearages and the children's support during minority. The father filed a motion in limine attempting to bar the presentation of any evidence relating to the insurance policy. Although the trial court denied the mother's motion, the judge certi-

fied for interlocutory appeal, pursuant to 12 O.S.1981 § 952(b)(3),[7] the question of whether a lien could be impressed on the father's life insurance policy.

I

## CHILDREN SEEKING PARENTAL SUPPORT ARE NOT "CREDITORS" WITHIN THE MEANING OF 36 O.S. 1981 § 3631.

◼ On December 10, 1990, a suggestion of death and a motion to dismiss the instant appeal was filed by the father's legal representative. The father's attorney informed the Court that the father died on November 9, 1990. He asserted that pursuant to 36 O.S.1981 § 3631,[8] the insurance policy became payable to the named beneficiary (the father's mother) and that it was no longer subject to claims of creditors, e.g. the children. We find this argument unpersuasive. In *Aetna Life Ins. Co. v. Bunt,* 110 Wash.2d 368, 754 P.2d 993, 999 (1988), the Washington Supreme Court found that claims for child support are not equivalent to the claims of creditors and that statutes like § 3631 were enacted specifically to ensure that an unfortunate debtor has a means to support his/her family.[9] In *Meadows v. Meadows,* 619 P.2d 598, 600 (Okla.1980), we found that statutes exempting property from legal process in the enforcement of a claim were not applicable to a claim for alimony for support. In *Meadows,* the father argued for exemption of social security disability benefits and workers' compensation benefits

---

6. Although the monthly premiums were paid during the marriage, the facts are disputed whether marital funds were used to pay the premiums.

7. Title 12 O.S.1981 § 952(b)(3) provides:
   "(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof: ...
   (3) Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. If the

Supreme Court assumes jurisdiction of the appeal, it shall indicate in its order whether the action in the trial court shall be stayed or shall continue...."

8. Title 36 O.S.1981 § 3631, see note 1, supra.

9. See also, *Sinsel v. Sinsel,* 47 Or.App. 153, 614 P.2d 115, 120 (1980) (A creditor protection statute does not preclude persons who have direct claims to insurance proceeds from asserting those claims—such statutes are enacted to insulate insurance payments from general creditors.)

based upon statutes containing language similar to § 3631's exemption from creditors. We found, like the Washington Court in *Aetna Life*, that the principal reason for the statutory exemptions is to protect the dependents of the party claiming the exemption and that support alimony was not a "debt" within the meaning of the statutory provisions exempting the husband's wages from the claims of creditors. We are similarly persuaded that children seeking support are not creditors within the meaning of § 3631.

## II

**INSOFAR AS ACCRUED PAYMENTS REMAIN UNPAID AT DEATH, AN ACTION FOR CHILD SUPPORT DOES NOT ABATE ON THE DEATH OF A PARENT.**

■ On February 4, 1991, we issued an order to the mother to address the issue of whether, because of the death of the father, the instant cause was abatable under *Pellow v. Pellow*, 714 P.2d 593, 597 (Okla. 1985). Although we held in *Pellow* that a cause of action for divorce terminated upon the death of either spouse, we also found that the wife's appeal concerning the related property division did not abate. Research reveals two cases addressing the abatement of child support on the death of a parent. New Jersey finds that issues of child support do not abate with the death of a parent.[10] The same cause of action is abatable in Florida.[11] We cannot conclude that here, the children's need for support is any less compelling than was the wife's need to effect an equitable property division in *Pellow*. Insofar as accrued payments remain unpaid at death, the children's action for child support did not die with their father. On remand, the appropriate parties may be substituted for the

father pursuant to the mother's request for substitution of parties.

## III

**PURSUANT TO 43 O.S.Supp.1989 § 116 AND THIS COURT'S PRONOUNCEMENT IN *Yery v. Yery*, 629 P.2d 357, 363 (Okla.1981), A LIEN MAY BE IMPRESSED ON A PARENT'S PRE-EXISTING LIFE INSURANCE POLICY TO SECURE THE PAYMENT OF CHILD SUPPORT. THE LIEN MAY ENCOMPASS ACCRUED PAYMENTS WHICH REMAIN UNPAID AT THE TIME OF THE PARENT'S DEATH AND ATTORNEY FEES AND COSTS.**

The mother asserts that 43 O.S.Supp. 1989 § 116 gives the trial court authority to require the father to maintain a life insurance policy for his children's benefit. Although the Oklahoma statute does not expressly provide that the trial court may require life insurance, it does provide that:

"The court may order a person obligated to support a minor child to post a security, bond, or other guarantee in a form and amount satisfactory to the court to ensure the payment of child support."

The father argued that § 116 is inapplicable. He contended that because the duty to support one's children ceases upon a parent's death,[12] married parents have no legal obligation to secure the future support of their children, and that to require divorced parents to provide post-mortem support of their children is an affront to the constitutional right of equal protection. The father also alleged that because the responsibility of a nondivorced parent to support a dependent child ends upon that parent's death, a nondivorced parent is free to disinherit a dependent child; and that there is no rational basis for making a difference between nondivorced parents and divorced parents.

---

**10.** *Jacobson v. Jacobson*, 146 N.J.Super. 491, 370 A.2d 65, 65–66 (1976).

**11.** *Hirsch v. Hirsch*, 519 So.2d 1056, 1056–57 (Fla.Dist.Ct.App.1988).

**12.** *Whitman v. Whitman*, 430 P.2d 802, 806 (Okla.1967). See also, Note, "Continuance of Alimony and Payments for Support of Minor Children after a Husband's Death", 35 Va.L.Rev. 482 (1949).

## A.

### EQUAL PROTECTION.

We are not persuaded by the father's equal protection argument. Facially, § 116 implicitly allows an insurance policy to be utilized as security for child support payments. Therefore, we must uphold § 116 unless it is clearly, palpably, and plainly inconsistent with fundamental law.[13] In testing the validity of a state statute which differentiates in its treatment of one class paralleled with its treatment of another class, the statute is immune to an equal protection attack if the basis for the differentiation is neither arbitrary nor capricious, and if it bears a reasonable relationship to a legitimate aim.[14] The Fourteenth Amendment does not require that equal protection be measured by exact equality of classification.[15] It does require that the classification rest on bona fide, not feigned differences; that the distinction have some relevance to the purpose for which the classification is made; and that the different treatments are not arbitrary.[16]

Section 116 was enacted to ensure that court ordered child support obligations are satisfied. Because divorced parents may be more likely to disinherit a child of a severed marriage than would a parent married to his/her offspring's natural parent, there is a bona fide reason for requiring that a divorced parent provide security for the payment of child support. The distinction between divorced and non-divorced parents relates to the goal of § 116—ensuring support for the children of divorced parents. Because the treatment of divorced and non-divorced parents is not arbitrary and because the distinction created by § 116 relates to its goal, we find that requiring security for the payment of child support violates neither equal protection rights nor the proscription against special laws.[17]

## B.

### SECURITY FOR PAYMENT OF CHILD SUPPORT AFTER DEATH.

In *Kunc v. Kunc*, 186 Okl. 297, 97 P.2d 771, 776 (1939), this Court found it lacked authority to require a husband and father to build an estate, by insurance or otherwise, *to be paid to a child after majority*. We distinguished the limited holding of *Kunc* in *Yery v. Yery*, 629 P.2d 357, 363 (Okla.1981). In *Yery*, we determined that a provision in a divorce decree requiring the father to purchase life insurance *to guarantee support for his minor children was not void on its face*.[18] We concluded in *Yery* that this procedure protected the alimony and child support judgment from the untimely death of the parent.

Likewise, the plain language of § 116 allows a trial court to take measures to insure that court-ordered child support will be paid. Pursuant to § 116, a trial court may require the posting of a bond, security, *or other guarantee* in order to be certain that child support obligations will be met. Section 116 provides an avenue through which trial courts may guarantee support for minor children when parents charged with the obligation might fail to fulfill it—an insurance policy is one route the trial court may take. Pursuant to § 116 and this Court's pronouncement in

---

13. *Turley v. Flag–Redfern Oil Co.*, 782 P.2d 130, 137–38 (Okla.1989); *Texas Okla. Express v. Sorenson*, 652 P.2d 285, 289–90 (Okla.1982).

14. *Turley v. Flag–Redfern Oil Co.*, see note 13, supra; *Kirk v. Board of County Comm'rs*, 595 P.2d 1334, 1336–37 (Okla.1979).

15. *Clegg v. Oklahoma State Election Bd.*, 637 P.2d 103, 105 (Okla.1981); *Kirk v. Board of County Comm'rs*, see note 14, supra.

16. *Turley v. Flag–Redfern Oil Co.*, see note 13, supra; *Bowlin v. Alley*, 773 P.2d 365, 368 (Okla.

1989); *Kirk v. Board of County Comm'rs*, see note 14, supra.

17. Okla. Const., art. 5, § 46 provides in pertinent part:

   "The Legislature shall not, except as otherwise provided in this constitution, pass any local or special law authorizing: ..."

18. *Whitman v. Whitman*, see note 12, supra; *Smith v. Funk*, 141 Okl. 188, 284 P. 638, 641 (1930).

*Yery,* a trial court may place a lien of first priority on a parent's pre-existing life insurance policy to secure payment of child support. The lien may encompass accrued payments which remain unpaid at the time of the parent's death and attorney fees and costs. However, neither § 116 nor *Yery,* are dispositive of the precise question presented here—whether, in absence of legislative directive or an agreed settlement, security may be required for child support payments accruing after a parent's death.

At early common law a father had a paramount right to the custody of the children of his marriage and a correlative duty to support those children until they reached the age of majority.[19] However, the father's duty to support his minor children terminated at his death.[20] This principle evolved from the inheritance common law which allowed a father to disinherit his entire family by will without stating any cause for the disinheritance. The children did not have a property right in their father's assets and were cared for by the parishes. The parishes had no right of indemnity against the deceased father's estate.[21]

The majority of states follow the common law approach and hold that upon the death of a parent under court order to make child support payments, the order terminates automatically with respect to payments accruing after death.[22] These jurisdictions reason that if a court desires to impose a greater duty than that in existence at common law, there must be express language in an agreement or decree so providing. In absence of such language, these courts assert no authority to impose the obligation on the deceased parent's estate.[23] They also hold that imposing a child support obligation on a parent's es-

---

**19.** The common law of England did not afford the child any means of enforcing the right. However, failure to provide maintenance of a child was an indictable offense. 1 J. Wendell, "Commentaries on the Laws of England," Ch. 16, § I(1), p. 441 (Harper and Brothers 1859).

**20.** *In re Estate of Brown,* 100 Idaho 300, 597 P.2d 23, 23–4 (1979); *In re Estate of Sweeney,* see note 3, 500 P.2d at 66, supra.

**21.** *Carey v. Carey,* 163 Tenn. 486, 43 S.W.2d 498–99 (1931). Early commentaries on the common law indicate that neither the question of support for a man's children during life nor after his death was considered so much a legal as a moral question. At common law the principal duties of parents to their legitimate children consisted of providing maintenance, protection, and education. Those duties were imposed upon principles of natural law and affection laid on them not only by nature herself, but by their own proper act of bringing them into the world. Even if civil law enforced these duties, Providence was found to have done it more effectually by implanting in the breast of every parent that natural insuperable degree of affection which not even the deformity of person or mind, not even the wickedness, ingratitude, and rebellion of children, can totally suppress, or extinguish. *Sheppard v. State,* 306 P.2d 346, 352 (Okla.Crim.1957); *School Bd. Dist. No. 18 v. Thompson,* 24 Okl. 1, 103 P. 578–79 (1909); 1 J. Wendell, "Commentaries on the Laws of England," see note 19 at 447, supra; 1 T. Cooley, "Commentaries on the Laws of England," Ch. 16, § 447, p. 292 (Callaghan & Co. 1884). Even though an Englishman was free to disinherit his children, the general practice in the upper class was to provide a fund for a modest livelihood to the younger children and to settle the bulk of the estate on the eldest offspring. Parents were not allowed to disinherit any child by implication. The intent of the testator was required to be certain, and the "favor of the laws" was with the heirs. J. Wendell, "Commentaries on the Laws of England," see note 19 at 449, supra.

**22.** *Gordon v. Gordon,* 195 F.2d 779 (D.C.Cir. 1952); *Ellis v. Ellis,* 292 Or. 502, 640 P.2d 1024, 1027 (1982); *Budig v. Budig,* 481 S.W.2d 95, 97 (Ky.1972); *McKamey v. Watkins,* 257 Ind. 195, 273 N.E.2d 542 (1971); *Mullen v. Sawyer,* 277 N.C. 623, 178 S.E.2d 425, 428 (1971); *Fower v. Fower Estate,* 448 S.W.2d 585, 587 (Mo.1970); *Bailey v. Bailey,* see note 3, 471 P.2d at 222, supra; *Whitman v. Whitman,* see note 12 at 806–07, supra; *Scudder v. Scudder,* 55 Wash.2d 454, 348 P.2d 225, 227 (1960); *Lewis v. Lewis,* 239 Miss. 728, 125 So.2d 286, 290 (1960); *In re Estate of Fessman,* 386 Pa. 447, 126 A.2d 676, 678 (1956); *Robinson v. Robinson,* 131 W.Va. 160, 50 S.E.2d 455, 459 (1948); *Blades v. Szatai,* 151 Md. 644, 135 A. 841, 841–42, 50 A.L.R. 232 (1927); *Gordon v. Valley Nat'l Bank,* 16 Ariz. App. 195, 492 P.2d 444, 444–45 (1972); *In re Estate of Kerby,* see note 4, supra. See also, Annot., "Death of Parent as Affecting Decree for Support of Child", 18 A.L.R.2d 1126 (1951).

**23.** *In re Estate of Sweeney,* see note 3, supra; *Bailey v. Bailey,* see note 3, supra; *In re Estate of Fessman,* see note 22, supra; *In re Estate of Kerby,* see note 4, supra.

tate circumvents the long established right of the parent to dispose of his/her property at death and is illogical.[24] The majority finds that the obligation invests children of divorced parents, as opposed to children of families where no divorce has occurred, with a preferred status akin to a mandatory right to inherit to the extent of assured support during minority. These jurisdictions argue that such an obligation would disrupt the general theory of inheritance and interfere with the common rules governing descent and distribution of estates.[25]

The minority view, which allows support obligations to survive the death of a parent, recognizes the greater likelihood of a divorced father leaving a child without financial protection or security. These jurisdictions hold that unless a contrary intention is clearly expressed, the death of the parent does not discharge or terminate an order in a divorce decree or provision in a property settlement agreement obligating the parent to pay a periodic sum for the support of a minor child. Instead, a balance is stricken between infringing upon the parent's right to disinherit his/her child—the strongest argument in favor of nonsurvival—against the need to protect minor children of divorced parents—the strongest argument in favor of survival.[26]

The common law is intact in Oklahoma to the extent that it has not been modified by the constitution, the statutes, judicial decisions, and the condition and wants of the people.[27] By enacting § 116, the Legislature abrogated the common law when it provided that a parent may be required to provide security for child support accruing during the parent's lifetime. However, the Legislature has not spoken on the issue of providing security for child-support payments which might accrue after a parent's death and before a child reaches majority. Because there is no legislative directive, we are constrained to align ourselves with the majority of jurisdictions[28] which find that in absence of statute[29] or an agreed settlement,[30] security may not be

---

24. *Whitman v. Whitman,* see note 12, supra; *Streight v. Estate of Streight,* see note 3, supra.

25. *In re Estate of Brown,* see note 20, supra; *Robinson v. Robinson,* see note 22, supra. Other arguments advanced in support of non-survival of the child support obligation includes the position that survival or nonsurvival is a policy choice for the legislature, and the suggestion that survival of the obligation would delay the closing of the parent's estate. *In re Estate of Brown,* see note 20, supra.

26. *Hill v. Matthews,* 76 N.M. 474, 416 P.2d 144, 146 (1966); *Caldwell v. Caldwell,* 5 Wis.2d 146, 92 N.W.2d 356, 365 (1958); *Spencer v. Spencer,* 165 Neb. 675, 87 N.W.2d 212, 219 (1957); *Foster v. Foster,* 195 Va. 102, 77 S.E.2d 471, 475, 39 A.L.R.2d 1397 (1953); *Taylor v. George,* 34 Cal.2d 552, 212 P.2d 505, 507 (1949); *Edelman v. Edelman,* 65 Wyo. 271, 199 P.2d 840, 848–49 (1948); *West v. West,* 241 Mich. 679, 217 N.W. 924, 926 (1928).

27. Title 12 O.S.1981 § 2 provides:
"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."
Title 25 O.S.1981 § 29 provides:
"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice."

28. *Gordon v. Gordon,* see note 22, supra; *Ellis v. Ellis,* see note 22, supra; *Budig v. Budig,* see note 22, supra; *McKamey v. Watkins,* see note 22, supra; *Mullen v. Sawyer,* see note 22, supra; *Fower v. Fower Estate,* see note 22, supra; *Bailey v. Bailey,* see note 3, 471 P.2d at 222, supra; *Whitman v. Whitman,* see note 12, supra; *Scudder v. Scudder,* see note 22, supra; *Lewis v. Lewis,* see note 22, supra; *In re Estate of Fessman,* see note 22, supra; *Robinson v. Robinson,* see note 22, supra; *Blades v. Szatai,* see note 22, supra; *Gordon v. Valley Nat'l Bank,* see note 22, supra; *In re Estate of Kerby,* see note 4, supra. See also, Annot., "Death of Parent as Affecting Decree for Support of Child", see note 22, supra.

29. *In re Estate of Sweeney,* see note 3, supra; *Bailey v. Bailey,* see note 3, supra; *Streight v. Estate of Streight,* see note 3, supra.

30. *In re Estate of Sweeney,* see note 3, 500 P.2d at 66, supra; *Bailey v. Bailey,* see note 3, 471 P.2d at 222; *In re Estate of Fessman,* see note 22, supra; *In re Estate of Kerby,* see note 4, supra.

required for child support payments accruing after a parent's death.

## CONCLUSION

We find that pursuant to § 116 and this Court's pronouncement in *Yery*, a trial court may place a lien of first priority on a parent's pre-existing life insurance policy to secure payment of child support. The lien may encompass accrued payments which remain unpaid at the time of the parent's death and attorney fees and costs. In absence of legislative directive or an agreed settlement, security may not be required for child support payments accruing after a parent's death.[31] The modern trend of statutory law is to retreat from the harsh common law rules relating to support of children.[32] By enacting § 116, the Legislature established the public policy of this state.[33] The trial court may, pursuant to § 116, direct the father to name his children as primary beneficiaries of the policy to the extent to which child support payments accrued before his death.[34]

**CERTIORARI PREVIOUSLY GRANTED; ORDER SUSTAINING MOTION IN LIMINE REVERSED; CAUSE REMANDED.**

HODGES, V.C.J., and LAVENDER, DOOLIN, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, C.J., and SIMMS, J., dissent.

SIMMS, Justice, dissenting:

I must respectfully dissent from the Court's acceptance of certiorari to review this certified order. The action before us is moot and should be dismissed. The divorce proceeding abated as a matter of law with the father's death in November, 1990. See, *Pellow v. Pellow*, 714 P.2d 593 (Okla.1985); *Mabry v. Baird*, 203 Okl. 212, 219 P.2d 234 (1950).

Additionally, however, I must also take issue with the answer the Court provides in its advisory opinion. There is no support for holding that a lien in favor of petitioner may be impressed upon the proceeds of this life insurance policy for child support payments and other costs due at the policyholder's death, when another person is the beneficiary. The rights of the beneficiary under this life insurance contract vested immediately and became fixed upon the death of the insured. *Carson v. Carson*, 166 Okla. 161, 26 P.2d 738 (1933); *Harjo v.*

---

**31.** There are also practical as well as equitable reasons for reaching the conclusion that a parent's insurance policy may be subjected to a lien under § 116. Although a nondivorced parent may disinherit a dependent child, under Oklahoma's forced heir statute the parent cannot disinherit the surviving spouse. The surviving spouse may renounce the will and elect to claim a statutory forced share of the estate. Title 84 O.S.Supp.1984 § 44(B)(2) provides:

> "B. This subsection shall apply to the estate of a decedent who dies on or after July 1, 1985....
> 2. The spouse of a decedent has a right of election to take the one-half (½) interest in the property as provided in paragraph 1 of this subsection in lieu of all devises, legacies and bequests for the benefit of the spouse contained in the last will and testament of the decedent."

Ultimately, the forced share is available for the support of dependent children because the surviving parent remains obligated to support them. Title 10 O.S.1981 § 4 provides:

> "The parent entitled to the custody of a child must give him support and education suitable to his circumstances. If the support and education which the parent having custody is able to give are inadequate, the other parent must assist to the extent of his or her ability."

A child of a nondivorced parent has an indirect, if somewhat circuitous, guarantee against nonpayment of support. However, the dependent child of a divorced parent lacks the reciprocal safeguard, because a surviving divorced spouse is not entitled to a forced share of a former spouse's estate. *Kujawinski v. Kujawinski*, 71 Ill.2d 563, 17 Ill.Dec. 801, 376 N.E.2d 1382, 1390 (1978).

**32.** *Cissna v. Beaton*, 2 Wash.2d 491, 98 P.2d 651, 651–52 (1940).

**33.** See, *Allison v. Allison*, 188 Kan. 593, 363 P.2d 795, 799 (1961).

**34.** Should the trial court direct the father in this manner, any argument of impairment of contract would fail because a mere change in judicial decision is not such a constitutional deprivation. The argument of impairment of contract only arises from the making of the laws and not the construction by the courts. *McCoy v. Union Elevated R.R.*, 247 U.S. 354, 363, 38 S.Ct. 504, 506–07, 62 L.Ed. 1156, 1165 (1918); *Moore–Mansfield Constr. Co. v. Electrical Installation Co.*, 234 U.S. 619, 624, 34 S.Ct. 941, 943, 58 L.Ed. 1503, 1505 (1914); *Jackson v. Twin State Oil Co.*, 95 Okl. 96, 100, 218 P. 324, 328 (1923).

*Fox*, 193 Okl. 672, 146 P.2d 298 (1944); *O'Neal v. O'Neal*, 193 Okl. 146, 141 P.2d 593 (1943). In ruling that the proceeds of this policy may be encumbered to secure child support after the death of the insured, the Court ignores fundamental concepts of vested rights and basic tenets of insurance law as it runs roughshod over the rights of the beneficiary and the insured.

If, as the majority holds, 43 O.S.Supp. 1989, § 116 authorizes the trial court to place a lien on proceeds of a pre-existing life insurance policy belonging to a third party beneficiary to secure payment of child support unpaid at the time of the insured's death, then that statute is unconstitutional. The beneficiary's rights vested and were fixed at the time of the insured's death, and this Court has no power to take that property from the beneficiary who is not even a party to this action, and give it to another.

The majority's reliance on *Aetna Life Ins. Co. v. Bunt*, 110 Wash.2d 368, 754 P.2d 993 (1988) is misplaced. Unlike the instant case, the children of that insured father were making a direct claim to the proceeds of the insurance policy as rightful beneficiaries. The father there had been under an express court order in the divorce decree to maintain a life insurance policy with his children as irrevocable beneficiaries. He later violated that order by changing the designated beneficiary from his children to his second wife. Ruling in favor of the children, the court determined that the father's right to designate a beneficiary was restricted by the provisions of the decree and that the second wife was therefore not a "lawful beneficiary" within the definition of the exemption statute and was not entitled to take proceeds under its protection.

We have not been asked to determine whether or not the trial court here *could have* directed the father to name his wife and children as beneficiaries on the existing policy. That is not the question that the parties presented to the trial court, nor is it the question certified by the trial court for this Court. If it had been asked, we would have held that the power of the trial court to order an insured to name his children beneficiaries of a life insurance policy in a proper case is beyond question. This type of arrangement for the financial well-being of children is common in divorce courts in this state and has been so for many years. Any doubts that district courts have this power would certainly be laid to rest by the provisions of § 116. Ordering a divorce litigant to obtain and/or maintain a life insurance policy and to retain the children as beneficiaries is not the same thing, however, as ordering a lien placed on the proceeds of a pre-existing life insurance policy payable to another as beneficiary after the death of the insured.

Child support obligations abate upon the death of the parent. *Whitman v. Whitman*, 430 P.2d 802 (Okla.1967). Any efforts to obtain satisfaction of the child support due and owing upon this defendant's death would have to be brought against his estate in an action based on the reduction of the arrearage to judgment. While the obligation of a parent to support his or her child does not continue past death, it is certainly within the discretion and power of a trial court in a divorce action to order a parent to obtain and maintain life insurance policies and to direct that the children be named as the beneficiaries. While under proper facts the court could have ordered the father to name his children as beneficiaries of this policy when he was alive—no court, including this one, may take the proceeds from that policy to which the beneficiary has a vested right because of his death and order them given to the children.

In its zeal to "do equity" in this certified interlocutory order action which is moot and should be dismissed, the majority annuls important concepts of constitutional rights, vested interests and insurance law.

I am authorized to state that Chief Justice OPALA joins in the views expressed above.