Argued April 22, affirmed May 12, reconsideration
denied June 18, petition for review denied July 1, 1975

SULLIVAN, *Appellant, v.* SULLIVAN, now
known as SUTHERLAND (No. 306-191),
*Respondent.*

534 P2d 1178

*M. Chapin Milbank,* Salem, argued the cause for appellant. With him on the brief were Brown, Schlegel, Milbank, Wheeler & Jarman, Salem.

*Charles R. Mowry,* Portland, argued the cause for respondent. With him on the brief were Dardano, Mowry & Hanson, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Father appeals from an order of the circuit court awarding custody of his 15-year-old son to the natural mother and requiring him to make support payments of $60 per month for six months and $75 per month thereafter until the child reaches majority. The parties were divorced in 1965. The boy was one of three children, all of whom were originally placed in mother's custody. In December 1970, by stipulation and court order, custody of the boy was changed from mother, then living in California, to father, then living in Salem.

In January 1974 mother filed the motion which precipitated the current controversy. It appears that this was preceded by her visit to Salem in July 1973 at which time she discovered that the boy was being confined to the family garage as his living quarters as punishment for delinquency in which he had allegedly been involved. She took the boy with her to California at that time and thereafter filed the current motion.

When the matter was heard father sought to introduce evidence concerning "extraordinary expenses" he had incurred, while having custody of the boy, due to the child's allegedly delinquent acts. He had alleged this in the counteraffidavit he had filed. The reason given the trial court for the introduction of this evidence was that it was relevant to the determination of what support the father should pay if custody were transferred to the mother.

The trial court, upon objection, refused to receive this evidence. The evidence was then placed in the record by father under the equity rule allowing the same in order that it may be considered by the appellate court (which hears the case "anew" and which has full equity powers, ORS 19.125(3), 107.405)

in the event the appellate court determines that it should have been received. The only claim of error on appeal is that the court was wrong in not receiving and considering such evidence.

The father has not cited any authority which we consider to be in point in support of his contention. He has cited ORS 107.415 which became law in 1971. This statute provides that a custodial parent shall notify the other parent contributing money toward a minor child's support of income the child receives from his own gainful employment. The obvious reason for this legislation is that it will give to a paying parent an opportunity to move for reduction of support if he/she wishes to do so. The court *may* require restitution if such notice is not given as required by the statute. Father argues that since the mother has had the boy in de facto custody the boy has earned money as a grocery bag boy. This has nothing to do with the father's expenses incurred on account of the boy prior to the time the mother took his de facto custody. Further, the father has paid no support during the de facto custody. The trial court heard this evidence, and undoubtedly gave it proper consideration. The statute thus cited is of no aid to the father's contentions in this appeal.

The father has cited us an annotation in 2 ALR2d 831 (1948) but we find no cases cited in the annotation to support the father's contentions.

The father contends that domestic relations matters are heard in equity and that it is equitable he should be given consideration for the large amounts of money he claims the boy cost him while he had the custody. The trial court's ruling apparently was based on the concept that support paid for a child is for the child's current support. ORS 107.105(1)(b) and 107.135(1)(a). The court therefore was interested in father's and mother's current financial circumstances, and they had each already testified on that subject.

The question of what the father had at some past time paid for the boy, then, became of remote relevancy. A court sets the amount of the support in view of what is "just and proper," which is the statutory measuring device provided in ORS 107.105(1)(b).

■ What is "just and proper" must depend upon a balancing of the circumstances of concerned parties: father, mother and child. A circumstance that may be of little moment in one case may be large in another. In close situations, the question of what evidence shall be heard is discretionary with the trial court, which nevertheless must receive and consider relevant evidence. McCormick says:

> "Relevant evidence * * * is evidence that in some degree advances the inquiry, and thus has probative value * * *. But relevance is not always enough. There may remain the question, is its value worth what it costs? * * *" McCormick, Evidence 434, 438, § 185 (hornbook series, 2d ed 1972).

There was little probative value in the proferred evidence at bar, in light of additional evidence of the parties' present financial circumstances which had been heard by the court. Thus, we see why the trial judge could consider the evidence not to be worth the time to hear it. We think the trial judge properly decided the evidence was not relevant.

■ Yet, we have the evidence in the record and we also can exercise discretion with reference to considering it. The father advances a novel theory, the essence of which is that it is "just and proper" that his son be deprived of support from the father because the son had in the past allegedly cost father extensive sums by reason of delinquent acts. It would be a most rare case in which such a theory might be entertained. From our perusal of the record, we decide this is not such a case.

Affirmed.