Argued and submitted November 3, 1981, affirmed February 10, 1982

ELLIS,
*Respondent on Review,*

*v.*

ELLIS,
*Petitioner on Review.*

(CA 18634, SC 27942)

640 P2d 1024

Richard C. Houghton, Eugene, argued the cause and filed the petition and brief for petitioner.

Robert L. Ackerman, Eugene, argued the cause for respondent. With him on the brief was Ackerman & DeWenter, Eugene.

TANZER, J.

Campbell, J., filed a dissenting opinion.

## TANZER, J.

This is an appeal from a denial of a father's motion to modify a 1967 decree of dissolution by declaring his oldest daughter emancipated and by granting him credit for support payments which came due since her emancipation.[1] Custody had been awarded to the mother and the father was ordered to pay $60 per child per month, "for support and maintenance of said children until each child shall be twenty-one (21) years of age, self-supporting, or otherwise emancipated from the home."[2]

The trial court found that the daughter had become emancipated and it terminated the father's support obligation as to her effective on the date of filing of this motion. The father appealed, contending that his support obligation should have been terminated as of the date of the daughter's emancipation. The Court of Appeals held that regardless of when his support obligation terminated, the mother had "waived" her rights to support payments accruing subsequent to the date of the daughter's emancipation and modified the trial court order as requested by the father. We affirm the Court of Appeals, but on different grounds.

The parties' oldest child graduated from high school in June of 1978 and soon thereafter moved into her own apartment, became self-supporting, and established her own credit. The trial court found her to have become

---

[1] The father moved for similar relief regarding the parties' younger daughter which was denied upon a finding that she was not emancipated. We have no reason to review that finding and on review we reach no issue regarding this obligation. The mother has made no contention under *Cooper v. Matheny*, 220 Or 390, 392, 349 P2d 812 (1960), perhaps because the decree orders support for each child rather than for both. Our references to a child are to the older child only.

[2] In 1973, the legislature changed the age of majority from 21 to 18. Or Laws 1973, ch 827, § 14. The uncodified § 84 of that Act exempted certain things from its operation. Pertinent here are subsections (2)(a) and (b):

"(a) Nothing in this Act affects * * * an order, decree or judgment entered, a right accruing, accrued or acquired, or a liability, duty or obligation incurred, before the effective date of this Act, under the law then in effect.

"(b) A reference to majority, minority, age of majority or words of similar intent in an order, judgment or decree entered before the effective date of this Act shall be considered to be to the age of majority in effect when the order, judgment or decree was entered."

Therefore, for purposes of adjudicating the scope of this decree, we take 21 as the age of majority.

emancipated and the Court of Appeals found the time of emancipation to be November, 1978. After the child had moved out and become self-supporting, the mother notified both the father and the Department of Human Resources. The father, thinking his support obligation regarding the child was terminated, ceased paying child support for her. The mother advised the department that this was alright with her and, as a result, the department stopped billing the father for support for the child.

The father commenced this proceeding in February of 1980 seeking a declaration that his support obligation for the child had terminated in November of 1978. Although the trial court found her to have been emancipated as of November, 1978, it ruled that it could terminate the father's support obligations only back to the date this proceeding was commenced because it viewed the relief as modification of the decree. The court concluded that, despite the literal terms of the initial support decree and the mother's acquiescence in the father's cessation of payments, the support obligations for the child had continued to accrue into final judgments outside of its powers under ORS 107.135(2) to grant relief.

■ ORS 107.135(2), relating to the enforcement of support decrees, provides:

"The decree is a final judgment as to any instalment or payment of money which has accrued up to the time either party makes a motion to set aside, alter, or modify the decree, and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any payment of money, either for minor children or the support of a party, which has accrued prior to the filing of such motion."

The enactment in 1921 of what is now ORS 107.135, by giving unpaid support payments the status of final judgments as they accrue, removed from Oregon courts the power to retroactively modify them. *Poe v. Poe,* 246 Or 458, 459-460, 425 P2d 767 (1967); *Shelley v. Shelley,* 204 Or 436, 283 P2d 663 (1955); *Forbes v. Jennings,* 124 Or 497, 503, 264 P 856 (1928).

■ ORS 107.135(2) is not applicable here because this case does not involve setting aside, alteration or modification of a decree. Despite the wording of the father's motion,

it sought only for the court to declare the extent of the father's obligation under the decree as issued, not to modify the decree or the obligation.

█ The authority of a court to order child support is governed by ORS 107.105(1)(b). The statute refers only to the "minor children" of the parties, a minor child being one under 18 years of age, ORS 109.510, not married, ORS 109.520, and not emancipated, *see* ORS 109.555.[3] The court may also order support for a "child attending school," defined as

> "* * * a child of the parties who is unmarried, is 18 years of age or older and under 21 years of age and is a student regularly attending school, community college, college or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment." ORS 107.108(1) and (4). *See further* Or Laws 1981, ch 669.

A child support order has no force past the child's period of minority, *Mack v. Mack,* 91 Or 514, 517, 179 P 557 (1919), and it has been held that a support obligation under the decree terminates when the child reaches either majority or an age set by the decree. *See Jensen v. Jensen,* 249 Or 423, 438 P2d 1013 (1968); *Mallory and Mallory,* 30 Or App 533, 535, 567 P2d 1051 (1977); *Cupp and Cupp,* 28 Or App 593, 596, 560 P2d 291 (1977); Clark, Law of Domestic Relations 513-514, § 15.3 (1968).

---

[3] Courts generally exercise their authority to recognize the fact of emancipation, *see* Annot., *Minor — Implied Emancipation,* 165 ALR 723 (1946). This court has done so in the context of determining whether a son's assets are available for the obligations of a parent. In *Flynn v. Baisley,* 35 Or 268, 273, 57 P 908, 45 ALR 645 (1899), we held that emancipation could be found from circumstantial evidence:

> "A writing is unnecessary to evidence the emancipation of an infant, it having been held that his liberation may be established by direct evidence or implied from circumstances: [citations omitted] Nor is it necessary that the infant should abandon his home, or turn his parent out of doors, to afford proof of the latter's relinquishment of his earnings. * * *"

The legislature has provided a procedure whereby a minor can petition for a declaration of emancipation. The statutes specify that an effect of such a declaration of emancipation is to terminate the parent-child support obligation. ORS 109.555(1)(b) and 109.010. Here, too, a judicial finding of the fact of emancipation implies that the support-dependency relationship of father and child has ended. It is true, as the dissent states, that neither the emancipation statute nor this proceeding affect minimum voting or drinking ages. Statutory requirements for those acts have no legal relevance to emancipation and parental obligations in the context of judicial enforcement of a support order.

■    A support order cannot lawfully require more than the underlying statutes require or authorize. The statutory limitations of a child support obligation inhere in the decree whether stated in the decree or not because those limitations circumscribe the court's authority to make such an order. Here, some statutory limitations are stated in the decree and some are not, but they all have effect. Because the trial court found that the child was "otherwise emancipated" as of November of 1978, then, under the terms of the initial decree, the father's support obligation for the child terminated at that time and any support instalments on her behalf ceased accruing.

In sum, the decree only requires payment for the support of a minor child. There is no obligation under the decree to pay child support after the child is no longer minor. A judicial declaration that circumstances exist under which an obligation ceased to exist at a certain time does not "set aside, alter or modify" the decree in any respect; it merely describes the application of the decree in the circumstances.

■ ■    The dissent, relying on dicta in *Forbes v. Jennings, supra,* suggests that the amount of a judgment based on accrued unpaid support should be capable of ministerial computation by reference to the face of the decree and the judgment docket, thus rendering extrinsic facts immaterial. The measurement of a decreed obligation cannot always be that simple. Fact-finding is sometimes necessary to determine the extent of any judgment which is based upon accrued periodic payments ordered by a decree. Numerous examples exist which affect the extent of a ripened judgment which do not appear on the face of the decree but which may be proved by one who seeks the benefit of establishing a nonapparent duration of a decree. For perhaps most obvious example, this court has held that a support obligation terminates upon the death of the obligor, *Streight v. Streight,* 226 Or 386, 360 P2d 304 (1961). That fact affects the number of accrued payments which comprise a judgment, but it requires proof outside the decree for there to be judicial cognizance of it. Similarly, if the decree were silent as to the birthdate of a child, then the terminal date for accrual of child support payments would be subject to proof. If a child were to die before reaching

majority, no judgment would accrue thereafter and the obligor would be entitled to prove the fact of death to determine the extent of the judgment. That would also be true if a child reached majority by marriage or moved in or out of student status between the ages of 18 and 21 years. These examples demonstrate that a court may look to proof of facts extrinsic to the decree to determine the actual extent of a judgment based upon amounts accrued under a decree. To do so is to apply the decree to specific situations, not to diminish it. There is nothing inconsistent with this idea in *Forbes v. Jennings, supra, Poe v. Poe, supra,* or any other authority cited by the dissent.[4]

Although the mother concedes that death of a child or, perhaps, its reaching of a certain age would automatically terminate an accruing obligation, she argues that a different rule should be applied when the obligor sets up an "emancipation" defense because such a defense will generally entail more difficult fact-finding. This distinction is unpersuasive. Emancipation may not be as clear-cut a fact as death or marriage, but that is not a reason for a different rule.

Finally, much of the argument presented by the parties centered around equitable notions of estoppel and waiver, as was the Court of Appeals opinion. Given our determination that there were no such accruing instalments, we need not reach the father's equitable arguments.

Affirmed. Costs to respondent on review.

**CAMPBELL, J.,** dissenting.

I agree that a support order in a decree is only effective during the period of time that the child is a minor. However, I disagree that emancipation automatically

---

[4] The dissent also relies upon inferences drawn from ORS 107.415 which requires a custodial parent to notify a noncustodial supporting parent if a child earns income, marries or enters military service, and provides judicial authority to require "restitution" for "money paid" after a failure to provide such information. By its terms, the statute provides a means for the "restitution" by way of judgment or satisfaction of "money paid" in ignorance of those facts. Although some of the wording of subsection (2) may be ambiguous as to underlying legal assumptions, ORS 107.415 does not purport to govern whether a judgment continues to accrue when the obligation ceases to exist.

changes the status of a child from a minor to an adult. I agree with the trial court that under ORS 107.135(2) it had no power to set aside the child support payments which had accrued as a final judgment prior to the time that the father filed his motion to modify the decree. I would therefore affirm the trial court.

The majority in effect says the decree only requires payment for the support of minor children and there was no obligation by the father to pay the mother child support for the oldest child after November, 1978, because the trial court found the child to be emancipated and therefore no longer a minor.[1]

> "The significance of the word "emancipation" is not exact. It is used sometimes to signify a mere gift by parent to child of the latter's earnings, and sometimes to signify the complete severance, so far as legal rights and liabilities extend, of the parental relationship. Thus, emancipation may be either complete or partial, conditional or absolute. The minor may be emancipated for some purposes, but not for others, and the parent may be freed of some of his obligations and divested of some of his rights, yet not freed and divested of others. The child may be emancipated for the balance of his minority or for a shorter period." 59 Am Jur 2d *Parent and Child* § 93 at 191 (1971).

Also to be considered is the rule that emancipation does not remove the disabilities of infancy or operate to make the child *sui juris.* 59 Am Jur 2d *Parent and Child* § 93 at 193 (1971).

I have been unable to find an Oregon case that defines "emancipation," but the language of ORS 109.550 to 109.656, passed by the 1977 legislature supports the proposition that emancipation does not automatically change the status of a minor child to an adult.

ORS 109.550 reads:

> "As used in ORS 109.550 to 109.565:
>
> * * *

---

[1] The Court of Appeals in its opinion found the oldest girl, Lissa, to be emancipated as of November, 1978. 52 Or App 671, 674, 629 P2d 417 (1981). In footnote 2 the Court of Appeals said: "This is the date (November, 1978) Lissa moved into her apartment. Because of the disposition it made of the case, the trial court was not required to set the date of Lissa's emancipation."

"(2) 'Emancipation' means conferral of certain rights of majority upon a minor, as enumerated in ORS 109.555.
"(3) 'Minor' means a person under the age of 18 years."

ORS 109.555(2) provides:

"A decree of emancipation shall not affect any age qualification for purchasing alcoholic liquor, the requirements for obtaining a marriage license, *nor the minor's status under ORS 109.510.*" (Emphasis added).

ORS 109.510 provides:

"Except as provided in ORS 109.520 [majority of married persons], in this state any person shall be deemed to have arrived at majority at the age of 18 years, and thereafter shall have control of his own actions and business, have all the rights and be subject to all the liabilities of a citizen of full age."

I do not contend that ORS 109.550 to ORS 109.565 controls this case. It is a statutory scheme wherein a juvenile court on written application of a minor may grant a decree of emancipation after notice to the parents. I claim only that the statutory language shows that a child who is emancipated does not lose its status as a minor and is therefore consistent with the general law on the subject.

It seems clear in Oregon that when a court in a dissolution case declares a minor child to be emancipated because the child is self-supporting the child does not lose its status as a minor. Such a child would not acquire the right to vote. Or Const Art II, sec 2. It would still be a minor for the determination of conditions of employment. ORS 653.010. The consent of a parent or guardian would be required to obtain a marriage license. ORS 106.060. A person under 21 years of age can not purchase intoxicating liquor. ORS 471.105. A person under eighteen years of age is subject to the jurisdiction of the juvenile court and can only be tried in an adult court after a remand hearing. ORS 419.476, 419.533. All of these provisions of the law are based on age and not "emancipation." The best that can be said is that such a child is "emancipated" from receiving "support payments."

In the 1967 divorce decree the father was ordered to pay to the mother a specific sum per month "for the support and maintenance of said children until each child

shall be twenty-one (21) years of age, self-supporting, or otherwise emancipated from the home."

In March, 1980, the father in a pleading entitled "MOTION FOR ORDER MODIFYING DECREE" moved the trial court for an order requiring the mother to appear and show cause why "the decree on file herein should not be modified in the following respects: * * * granting (father) credit for any unpaid child support obligations with respect to the minor child of the parties, Lissa Ellis, from the date of her emancipation * * *."

The trial court found that the oldest daughter, Lissa, was emancipated and modified the decree by terminating the provision for her support as of March 31, 1980. The trial court held that under ORS 107.135(2) it did not have the power to give the father credit for support payments which were due prior to the filing of the motion to modify. In the words of the trial judge: "So any amounts that would be due, having gone to judgment, remain as a judgment."

ORS 107.135(2), relating to the enforcement of support decrees, provides:

"The decree is a final judgment as to any instalment or payment of money which has accrued up to the time either party makes a motion to set aside, alter, or modify the decree, and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any payment of money, either for minor children or the support of a party, which has accrued prior to the filing of such motion."

The majority skates around the above statute by saying:

"ORS 107.135(2) is not applicable because this case does not involve setting aside, alteration or modification of a decree. Despite the wording of the father's motion, it sought only for the court to declare the extent of the father's obligation under the decree as issued, not to modify the decree or the obligation.
* * *
"* * * Because the trial court found that the child was 'otherwise emancipated' as of November of 1978, then, under the express terms of the initial decree, the father's support obligation for the child terminated at that time and any support instalments on her behalf ceased accruing."

Calling a horse a cow does not make it a cow. Likewise, by calling a motion for modification a motion for declaratory relief does not make it so.

One of my disagreements with the majority over the application of ORS 107.135(2) centers on the meaning of the word "accrued." The majority claims that once the child in this case was in fact emancipated, the child support payments ceased accruing. The term "accrued" is used twice in the statute. Any installment or payment of money which has "accrued" prior to the motion to modify is a final judgment and the court does not have the power to modify the decree as to any support payment which has "accrued" prior to filing the motion.

The dictionary definition of "accrued" is: "due and payable," "vested," and "matured." Black's Law Dictionary 37 (4th Edition 1951).

The statute which became ORS 107.135(2) was enacted by the Oregon legislature in 1921. Prior to that time this court had held that an order to pay support was merely personal and created only an obligation in the nature of a debt and in the absence of an express order was not a lien upon the land of the obligor. *Mansfield v. Hill,* 56 Or 400, 107 P 471, 108 P 1007 (1910).

In the case of *Forbes v. Jennings,* 124 Or 497, 503, 264 P 856 (1928) Justice McBride explains why what is now ORS 107.135(2) was enacted:

"In that case [*Mansfield v. Hill, supra*], * * * the decree was never docketed in the lien docket, and therefore could not have been a specific lien in any event. This court was of the opinion that it was so indefinite as to duration and amount that no lien attached by virtue of the decree, and it is evident that the amendment of 1921 was enacted with the view of providing that such allowances in divorce cases should be raised from the grade of mere personal orders to the dignity of judgments. We find no reason, since the passage of such amendment, to distinguish them, as to their consequences, from other judgments involving the recovery of money. The language of the statute is explicit * * *."

The law as to judgments was the same then as it is now. The judgment is docketed with the clerk, ORS 18.320,

and is a lien upon any real property owned by the judgment debtor. ORS 18.350.

The case of *Forbes v. Jennings, supra,* at page 504, explains further:

"So we have here a final judgment that plaintiff's grantor pay the sum of $30 per month to his divorced wife for the maintenance of their minor daughter from the date of the decree until she is twenty-one years old. *After docketing such judgment, there is no uncertainty whatever as to the amount due or to become due.* All the clerk has to do is to deduct the payments, if any, * * * and compute the number of months in which payments due have *accrued,* and thereafter issue an execution for such balance." (Emphasis added).

It would seem clear that once the payment date for an installment of support money has passed and the amount has been docketed as a final judgment upon which execution could issue then the installment "is due and payable" and has "vested," "matured," and "accrued" within the meaning of ORS 107.135(2).

This type of case is controlled by our previous ruling in *Poe v. Poe,* 246 Or 458, 459, 425 P2d 767 (1967) wherein we referred to ORS 107.135(2):

"This court has repeatedly held, since the finality of the installment judgment was added to the statute in 1921 * * * that the court is without power to modify or change support payments once they become a judgment."

A judgment entered by a court that has jurisdiction of the parties and the subject matter is a final judgment. *Lytle v. Payette-Oregon Irr. Dist.,* 175 Or 276, 152 P2d 934 (1944). If the mother in this case had elected to have an execution issued on the unpaid installments of child support that had been docketed as a judgment, how could the father defend?

In 1971 the Oregon legislature enacted ORS 107.415, which provides:

"(1) If a party is required by a decree of a court in a domestic relations suit, as defined in ORS 107.510, to contribute to the support, nurture or education of a minor child while the other party has custody thereof, the custodial parent shall notify the party contributing such

money when the minor child receives income from his own gainful employment, or is married or enters the military service.

"(2) Any custodial parent who does not provide notice, as required by subsection (1) of this section may be required by the court to make restitution to the contributing party of any money paid, as required by the decree. The court may enter a judgment or satisfy all or part of any *accrued* judgment to accomplish the restitution." (Emphasis added).

I agree with Judge Warren's dissent in *Eagen and Eagen*, 52 Or App 299, 628 P2d 428 (1981), *modified on other grounds* 292 Or 492, 640 P2d 1019 (1982) that the apparent purpose of the above statute was to reinstate the power of the trial court to modify *accrued* support judgments in specific circumstances.

I also agree with the Court of Appeals in *Sullivan v. Sullivan*, 21 Or App 382, 384, 534 P2d 1178 (1975), wherein it said that the obvious reason for ORS 107.415 is to give the contributing parent an opportunity to move for a reduction of child support if that parent so desires.

The 1971 legislature by enacting ORS 107.415, giving the trial courts the power to modify accrued child support judgments in certain specific circumstances, reaffirmed that the courts do not have the authority to modify those judgments under any other circumstances.

In this case the mother gave the father notice in 1978 that the oldest daughter Lissa was self-supporting. This notice complied with ORS 107.415. The father elected not to file a motion to modify the decree based on a change of circumstances under ORS 107.135(1) until March, 1980, when he asked that the divorce decree be modified to give him credit for the unpaid child support payments for November, 1978 through March, 1980. Those *accrued* payments have been docketed as final judgments and cannot be deleted or modified. ORS 107.135(2).

To support its theory in this case the majority has to be claiming that the judgment is conditional and self-executing. That is, the judgment is conditioned upon the fact that the child needs support and that when the child is emancipated the support payments automatically terminate. I disagree with the proposition that the judgment is

self-executing. These are questions of fact which should be decided by the court. The mother provided the father with the notice required under ORS 107.415. Then the father should have the burden of going forward by way of a motion to modify the decree to determine the facts. It is the father who stands to gain by the modification of the decree. Under ORS 107.135(2) the court cannot modify the decree as to any support payments that have accrued prior to filing the motion.

It is important in the day to day functions of the trial courts, clerks of the court, district attorneys, the Department of Human Resources and the Support Division of the Department of Justice that the judgment records in child support cases reflect the correct amounts and are not subject to "after the fact" modifications by some court-made rule.

The majority in this case is straining to correct what it thinks is an inequitable decision by the trial court. The apparent inequity results from the fact that the mother told the Department of Human Resources that it was all right for the father to quit making child support payments. A court of equity cannot disregard the clear meaning of ORS 107.435 and ORS 107.415 to correct an apparent injustice. *Scoggins v. State Construction*, 259 Or 371, 375, 485 P2d 391 (1971). Whether or not the mother has a right to collect the accrued child support payments in this particular case should be determined by the law of waiver or estoppel. That is the basis upon which the Court of Appeals determined the case. 52 Or App 671, 629 P2d 417 (1981). I do not mean to infer that I necessarily agree with the result reached by the Court of Appeals.